CORDELL *et al. v.* HALL *et al.*[1]

*(Circuit Court, N. D. Illinois.* December 27, 1887.)

**1. FACTORS AND BROKERS—FACTOR'S LIEN—AGREEMENT TO HONOR CONSIGNOR'S DRAFTS.**

Farlow, a dealer in live-stock at Marshall, Mo., shipped live-stock to the defendants, live-stock brokers at Chicago, which were purchased by Farlow with money advanced him therefor by the plaintiffs, bankers at the place of shipment in Missouri. Farlow drew drafts on the defendants, payable to the plaintiffs, on each shipment, and all drafts so drawn were honored, excepting the last one, involved in this suit. This draft was dishonored, the defendants applying a large part of the proceeds of the last shipment on an old claim against Farlow, claiming a factor's lien. The plaintiffs in this suit claimed that the defendants had orally agreed with them to honor all Farlow's drafts drawn on shipments, and that on the faith of such agreement they advanced the money to Farlow to purchase the cattle, which agreement the defendants denied. The plaintiffs further claimed, regardless of such agreement, that the defendants knew that the cattle were purchased with money advanced by the plaintiffs to Farlow. *Held* that, if such agreement was made, the defendants were liable.

**2. SAME—NOTICE OF ADVANCES ON SHIPMENTS.**

If the cattle were purchased by Farlow with money obtained from the plaintiffs with the agreement that the plaintiffs were to be paid for their advances on such cattle out of the proceeds of the same when sold by the defendants as Farlow's brokers, and that the defendants knew of such agreement between Farlow and the plaintiffs, then the defendants, as Farlow's brokers, had no right to apply any part of the proceeds of said cattle to the payment of the debt of Farlow to themselves, until the draft was fully paid.

**3. SAME.**

And such is the law, whether such knowledge on the part of the defendants was actual or constructive, the question being whether the defendants knew that Farlow had obtained advances from the plaintiffs upon these cattle, and had appropriated the proceeds of the cattle to the payment of those advances by the draft. If they had such knowledge, they had no right to appropriate these proceeds to the payment of their own debt against Farlow. Such knowledge might be derived expressly, or from the course of business between the parties theretofore, or from the defendants' knowledge of Farlow's financial ability, or other pregnant facts.

At Law.

*Flower, Remy & Holstein,* for plaintiffs.

*Frank P. Sebree, H. Musgrave, Jos. A. Sleeper,* and *Theo. G. Case,* for defendants.

BLODGETT, J., *(charging jury.)* This suit is brought upon an alleged agreement by the defendant to pay a draft of $11,274, drawn July 13, 1886, by one George Farlow, payable to the plaintiffs. The plaintiffs, at the time of the transaction in question, were bankers at Marshall, in the state of Missouri. The defendants were live-stock brokers at the stock-yards in the city of Chicago. The plaintiffs' position is substantially this, as plaintiffs' proof tends to show: that on or about the last of March or the first of April, 1886, the defendants, by William Hall, one of the copartners, agreed with the plaintiffs that if they (the plain-

[1] Reported by Messrs. Flower, Remy & Holstein, of the Chicago bar.

tiffs) would cash the drafts drawn by George Farlow on them against shipments of live-stock made by Farlow to the defendants, they (the defendants) would pay such drafts. The first controversy you meet at the threshold of this case is as to whether such an agreement was made. The plaintiffs have called in support of their position one of the members of the firm as a witness, Mr. Cordell, who testifies in substance that this promise was made to him at his bank in the town of Marshall, in an interview between himself and Mr. Hall. William Farlow is also called as a witness by the plaintiffs, who testified that he was present at this conversation and heard it, or a great part of it; at least that he heard the defendant Hall say, "Go on and cash the drafts, and we will pay them, until further notice." The testimony of Mr. Cordell is to the same effect: that the defendant Hall said to him, "We will pay the drafts drawn for the cost of the cattle bought by Farlow and shipped to us, until further notice." There is a letter written by the defendants—not to the plaintiffs, but allowed to be put in evidence—in which they refer to the course of business; and there is the testimony of George Farlow tending to sustain the same proposition on the part of the plaintiffs. The plaintiffs insist that something is to be inferred from the course of business which immediately followed this alleged contract between themselves and the defendants, as the defendants went on and cashed the drafts as they were drawn. Although in many cases, as the proofs show, the proceeds of the cattle were not sufficient to pay the drafts, yet the defendants paid them without objection, and under such circumstances as make what they did in the way of paying this draft admissible proof in behalf of the plaintiffs, you being the judges of the weight and value of this circumstance as proof of plaintiffs' case. This business ran on in this way from the time the contract is claimed to have been made until the draft in question was drawn on the 13th of July, 1886. On the part of the defendants Mr. William Hall is called as a witness, and he testifies that he made no such contract as Mr. Cordell and Mr. William Farlow testify to; that he did not agree for his firm that they would pay the drafts drawn by Farlow for the cost of the cattle which he might buy to ship and consign to them; so that you have a conflict of testimony here, and it becomes your duty in this case, so far as you are able to reconcile this testimony if you can; if not, to say where the preponderance of the proof lies. You are the judges, under the law, of the credibility of these witnesses, and not only of the credibility of the witnesses, but to say which of them you will believe. It is for you to say, in the light of the testimony here, whether the defendants did agree, as is charged in this case, that they would pay these Farlow drafts that should be drawn, and you will say where the preponderance of the proof lies. You are the judges. You have heard the witnesses testify. You have seen them here in court, and are to say whether the plaintiffs' or defendants' position is sustained by the preponderance of proof. If you find from the proof that Mr. William Hall, one of the firm, agreed with the plaintiffs to pay these Farlow drafts drawn against the live-stock shipped by him to the defendants, that the draft in question was so

drawn, and that the defendants have refused to pay said draft, then the defendants are liable for the amount unpaid on this draft. You will remember that the proof shows without dispute that there was the sum of $5,936.55 paid, about three days after these cattle were sold, to the credit of the plaintiffs in one of the banks in this city. So plaintiffs admit the receipt of that amount on account of this draft, which leaves a balance due of $5,337.45 after applying this payment, with interest from 15th July, 1886, the time the draft was protested for non-payment, if you find this contract was made. You cannot find for the plaintiffs upon this aspect of the plaintiffs' case, unless you find from the proof that the defendants did agree to pay these drafts as they should be drawn upon the defendants by Farlow, and cashed by the plaintiffs. If you do find that this agreement was made, then the defendants are liable in this case for the unpaid portion of this draft, which is $5,337.45, and interest on the amount from the 15th of July, 1886, to the present time. If you find the testimony does not establish this agreement to pay these drafts by the defendants, then the defendants are not liable to pay the amount of the draft; but in that event, if you do so find, there is still another aspect of this case to be considered in the light of the evidence. If you are satisfied from the proof that the nine car-loads of cattle and the one car-load of hogs mentioned in this draft,—for you will observe the draft itself upon its face shows that it is drawn against nine car-loads of cattle and one car-load of hogs,—and you are to construe, in the light of all the testimony, that it was drawn against the nine car-loads of cattle and the one car-load of hogs shipped, out of which proceeds the draft is to be paid—if you are satisfied from the proof that the nine car-loads of cattle and one car-load of hogs mentioned in this draft as shipped by George Farlow were bought by Farlow with money obtained from the plaintiffs with the agreement that the plaintiffs were to be paid for their advance on such cattle out of the proceeds of such cattle when sold by the defendants as Farlow's brokers, and that the defendants knew that such was the agreement between Farlow and plaintiffs at the time defendants received the consignment,—that is, that the defendants knew from the course of business between the plaintiffs and George Farlow and themselves, and from other sources, that Farlow had obtained the money to pay for said cattle and hogs from plaintiffs, and had appropriated the proceeds of said shipments to the payment of said draft,—then the defendants, as Farlow's brokers, had no right to apply any part of the proceeds of said cattle to the payment of the debt of Farlow to themselves until the draft was fully paid. You will remember the proof shows these cattle and hogs brought, net cash, $10,102.27, out of which the defendants paid to themselves—that is, they kept for the purpose of canceling their claim against Farlow—the sum of $4,165.72; and deposited the balance, $5,936.55, to the credit of the plaintiffs with their correspondent here for the use of George Farlow. Now, if you are satisfied from the proof that the defendants knew that Farlow had obtained advances from the plaintiffs upon these cattle, and that he had appropriated the proceeds of these cattle to the payment of those advances by

this draft, then the defendants had no right to appropriate these proceeds to the payment of their own debt against Farlow. So that, in this aspect of the case, if you find from the proof that Farlow had appropriated, with the knowledge of the defendants, to the payment of this draft, the proceeds of these cattle and hogs, then the defendants are liable for this $4,165.72, which they applied to the payment of their own debt against Farlow. You are to infer, or, rather, you are to say whether, from the evidence in this case as to the course of business and dealings between the defendants and Farlow, and between the plaintiffs and the defendants, the defendants knew of the dealings between Farlow and the plaintiffs,—whether they did or did not know Farlow had been advanced money from the plaintiffs upon these cattle. In considering this aspect of the case you are to say whether the evidence shows that Mr. William Hall, at the time he visited Marshall, Mo., in the spring, found Farlow to be a man of means, and enabled to make purchases of such a shipment of cattle as this was, or whether he knew from Farlow's financial condition that he must have obtained advances from some one to purchase this shipment, and therefore that the persons making the advances were interested in the shipment. When this draft came to the notice of defendants, you are to say from the proof whether the draft itself was not notice that plaintiffs' money had purchased these cattle and hogs, because the draft refers to the cattle and hogs. You will remember that the testimony tends to show, and is, and perhaps it may be said to be undisputed, that the defendants knew that Farlow was not a man of sufficient means to carry on such a volume of business as he had been carrying on with defendants from the time he began these shipments,—about the 1st of April, 1886. To recapitulate, if you find the contract which is set out in this declaration—that the defendants agreed to pay these drafts —is proven, then the defendants are liable for the full amount unpaid in the draft, with interest at 6 per cent. If you find that this branch of the case is not made out, but do find that the defendants knew that the plaintiffs had advanced their money on these cattle, and that Farlow had appropriated the proceeds of them to the repayment of those advances, then you will find the defendants liable for the amount of money which they then appropriated, $4,165.72, and interest on that from the time they appropriated it, which would be the time they received it,—the 15th of July. For your convenience I have just noted with pencil on the draft and protest, which you will take with you, the amount of the draft and amount of payment, $5,936.55, and struck balance, $5,337.45, and have also noted the undisputed fact as to the amount of the proceeds of the cattle, and the amount which was paid to the plaintiffs out of the proceeds, leaving the balance of $4,165.72, which, in the latter aspect of the case, would be the sum upon which you would compute the interest.

Verdict for plaintiffs for full amount claimed. Judgment on verdict. Defendants appeal to supreme court.