WILL McIVER, *Constable,* GROVER ELLER, KEE R. McKEE, AND F. O. MYERS v. WILLIAMSON-HALSELL-FRASIER COMPANY.

(Filed September 20, 1907.)

(92 Pac. 170.)

1. **ATTACHMENT—Property Subject—Goods Conditionally Sold.** Where goods are sold and delivered upon condition that the title shall not pass to the vendee unless the price agreed upon be paid, the vendee has no attachable interest in the property until the performance of the condition.

2. **SALES—Rights of Seller—Purchasers— Attaching Creditors— Case.** Where articles of merchandise are sold and delivered, and the terms of the sale are that the same are to be paid for "spot cash," this means cash on the delivery of the goods, and where the same are delivered, and the vendee says to the vendor, "I will pay you as soon as I can check them up," and when the agent of the vendor went to the vendee's place of business five or six consecutive mornings after the delivery, and failed to find him in, but finally, after such repeated calls, he succeeds in finding him, and upon demand for payment is told by the vendee that he cannot pay for the goods, and for the vendor to take his goods back, and the agent of the vendor says, "all right," and immediately goes to the wholesale house of the vendor and re- ports the same, and on the same day comes back to the place of business of the vendee with the teams and wagons of the vendor to take away the goods, and finds the place of business of the vendee in the hands of a constable, who has made a levy upon the goods in question by virtue of a writ of attachment and refuses to give them up to the agent of the vendor, **Held,** that, in an action of replevin, the vendor can recover his goods as against such constable, or the attaching creditors of the vendee.

(Syllabus by the Court.)

*Error from the Probate Court of Oklahoma County; before Wm. P. Harper, Probate Judge.*

Affirmed.

*John S. Hunter,* for plaintiffs in error.

*Crockett & Johnson,* for defendant in error.

## STATEMENT OF FACTS.

During the year 1905, Williamson-Halsell-Frasier Company, defendant in error, was engaged in the wholesale grocery business in Oklahoma City, Oklahoma Territory. Sometime between the 1st and 13th of April, 1905, the defendant in error sold and delivered to one Joseph Pickford, a retail groceryman in Oklahoma City, Oklahoma, a bill of goods, the terms of which sale were cash. These goods were delivered to Pickford in the afternoon, at his usual place of business in Oklahoma City. Invoices were delivered with the goods. The next morning, the agent of defendant in error called upon Pickford at his place of business and demanded payment for the goods. He was then told by Pickford that he would pay for the same as he could check them up and compare them with the invoices. The agent of the defendant in error called at Pickford's place of business on four or five consecutive mornings afterwards, but was not able to find him in. Finally, some days after the goods were delivered, at an early hour in the morning, about 6:30, he succeeded in finding Pickford in his place of business, and then again demanded payment for the goods, and was then told by Pickford that he could not pay for the goods, and that the defendant in error could take back their goods. The agent of the defendant in error said, "all right," and went immediately to the wholesale house of the defendant in error, and, as soon as he could secure teams and wagons, returned, on the same day, for the goods. On his return, he found the place of business of Pickford's was in the hands of Will McIver, constable, who had made a levy on the said goods by virtue of attachment in favor of Grover Eller, issued by J. J. Beall, a justice of the peace in Oklahoma City township, said levy having been made on the 25th day of April, 1905, and said constable refused to deliver the goods to the agent of the defendant in error. On the 28th day of April, 1905, Kee R. McKee and F. O. Myers, who were judgment creditors of said Pickford, caused executions to be issued on their judgments which had previously been obtained by them, and said executions were placed

in the hands of Will McIver, who on the same day levied said execution on the said goods, subject to the attachment levy of Grover Eller. On the 4th day of May, 1905, defendant in error commenced replevin proceedings in the probate court of Oklahoma county, Oklahoma Territory, to recover the goods from Will McIver, constable, and on the 13th day of May, 1905, the plaintiffs in error moved the court to be allowed to intervene in said cause, and thereupon filed their separate answers to plaintiff's petition. On the 5th day of October, 1905, the cause was tried by a jury, and a verdict returned for the plaintiff. On the 7th day of October, 1905, defendants filed their motion for a new trial, which was overruled by the court on the 17th day of October, 1905, and judgment entered on the verdict, to which exceptions were saved, and the case is brought here for review.

Opinion of the court by

IRWIN, J.: There are many assignments of error urged by counsel for plaintiffs in error for a reversal of this case, but we think it is only necessary to notice three, to-wit: That the court erred in rendering judgment for the defendant in error; (2) that the court erred in giving instructions offered by defendant in error; and (3) that the court erred in not numbering and marking his instructions as required by the statute.

Counsel for plaintiffs in error cite several statutes of Oklahoma, and some decisions of the supreme court of Oklahoma, as well as many decisions from other courts, to sustain their assignments of error. But we think, after an examination of these statutes and these authorities, that they are not in point, for the reason that counsel for plaintiff in error starts out in this case with the assumption that there was an absolute sale upon credit which the defendant in error is seeking to rescind on account of fraud and misrepresentations practiced by the purchaser, and the authorities cited are all in cases where a sale was made on fraudulent representations of the vendee, by reason of which the vendor,

on discovery of the fraud, seeks to rescind the sale. Clearly this is not such a case. Here there never was a complete or executed sale, because the purchaser never complied with his part of the contract. While the authorities cited by counsel for plaintiff in error correctly state the law in the abstract, yet they are not in point here in the case at bar. The fallacy of the plaintiffs in error is based on their failure to recognize the distinction between a case where the contract never matured into a complete sale because of the failure of the vendee to perform his part of the contract, and a sale which was executed and completed by both parties, and which the vendor subsequently seeks to avoid by virtue of fraud practiced upon him by the purchaser. The distinction is obvious. In the first instance, there is no complete and executed contract of sale; in the other instance, there is a complete and executed sale, voidable on the ground of fraud. Now, we take the rule to be well established that where a sale is made, and where the terms of the sale are cash, this, among merchants, is understood to mean cash on the delivery of the goods; that in the commercial world there is no difference and no distinction between a cash sale, or what is known as "spot cash sale," and a sale for cash on delivery. All of the evidence in this case shows, and in fact the proposition is undisputed, that this is what is known in commercial parlance as a "spot cash sale;" that is, that by the terms of the sale the vendee was to pay cash for the goods upon the delivery of the same. In such a sale, the title does not pass until the goods are paid for, and a party who delivers goods under and by virtue of such a contract for sale has the right to replevin his goods on failure of the vendee to pay the purchase price. In other words, the title to the goods does not pass until the condition of payment has been complied with.

The supreme court of Kansas, in the case of *Dougherty v. Fowler*, reported in 25 Pac. 40, had a similar question under consideration. That case was an action in replevin commenced by the plaintiff below in the district court of Bourbon county, to recover

fifty tubs of butterine from the sheriff, who held the same by an order of attachment issued against the property of T. W. Price and D. B. Fabyan, who had been doing business in Ft. Scott, under the name of T. W. Price & Co., but had sold out their business some time before the attachment was issued. On the 24th of November, 1885, T. W. Price went to Kansas City, Missouri, and made an arrangement with the plaintiff below whereby he was to have shipped to him, at Ft. Scott, 50 tubs of butterine, payable cash on arrival. The butterine was not made at the time. It was to be procured from other parties, and there was no selection made except by sample. The butterine was shipped on Friday, the 27th of November, and reached Ft. Scott the following morning, and was immediately received by Price, and the freight paid, and stored in the cellar. The goods were invoiced in the usual way, followed by detailed weight of each separate tub, and written on the bill were the words: "Terms cash." On Monday, the 30th of November, Price caused the butterine to be moved into a different part of the cellar from where it had been previously stored, and removed all the shipping tags, and on Tuesday morning, December 1st, wrote the plaintiff that he was unable to pay for the butterine; that the goods belonged to the plaintiff; and he had placed them in the possession of a reliable party, who would take care of them until he could hear from the plaintiff. It appears from the testimony that this letter reached the plaintiff below at 8:30 o'clock on Wednesday morning, December 2nd, who concluded to accept the proposition contained in the letter, and to take back the shipment of butterine. It was in evidence that Price had owed the plaintiff below $10.70 upon some other dealings, and had paid out for freight on the merchandise $8.05. At noon of the same day the butterine was attached by one of the creditors of T. W. Price & Co. A trial was had in the district court, and, upon the conclusion of the evidence, the court instructed the jury to return a verdict for the plaintiff. It is insisted that in that case the letter written by Price on the 1st da yof December was

not competent evidence, as not having been properly authenticated. Then the court said:

"It is further insisted that 'mental conclusion' reached to take the goods back was not competent; that the only way to prove that the goods were taken back was what was in fact done. The acceptance of Price's offer was an affirmative act, and not a mere mental conclusion, as assumed by the court below. This we regard as the decisive question in this case. Let us consider it. The facts are virtually undisputed. The goods were shipped to be paid for on arrival. They were received by Price, and the freight paid, and stored by him. Before the rights of any other parties intervened, the vendee said to the vendor: 'I cannot pay you for. the goods, and I have placed them in the hands of a party who will take care of them until he hears from you. The goods are yours. I have done what I thought best.' Does this proposition, made by the vendee and received by the vendor, require affirmation upon the part of the vendor to make the transaction complete? An answer to this question is a decision of this case. If this proposition stood alone and in no way connected with what had preceded it, it would be less difficult of solution. We would say that an acceptance was necessary upon the part of the plaintiff in error to make the offer binding and the transaction complete. But we must consider the whole transaction, from its inception to the transmittal of the letter, and say whether the title to the property in question ever passed to Price. The terms of the sale were 'cash on arrival,' or 'cash,' as expressed in the invoice. Now, the rule is that if goods be delivered before the price is paid, in compliance with the usage of trade, the delivery is conditional and until the condition is performed the vendee holds the goods in trust for the vendor, against all persons except *bona fide* purchasers without notice. Story, Sales, §213; *Hussey* v. *Thornton*, 4 Mass. 405; *Marston* v. *Baldwin*, 17 Mass. 606; *Corlies* v. *Gardner*, 2 Hall (N. Y.) 374; *Reeves* v. *Harris*, 1 Bailey (S. C.) 563. It seems from the evidence in the case that there were two concurrent conditions to make the sale complete: Delivery upon the part of the vendor, and payment upon the part of the vendee. This frequently occurs where goods are shipped by common carriers, as in this case to be paid for on arrival; and the failure to make payment will be regarded as a nonperformance of the condition precedent, upon the part of the vendee, and will entitle the

vendor to reclaim his goods. Newm. Sales, § 227. In *Stone v. Perry,* 60 Me. 48, it appeared that the plaintiffs were merchants in Boston, and a broker called and inquired the price of flour, and plaintiff asked whom it was for, and the broker replied: 'Butler, of Portland.' Plaintiff answered that he did not know him, but that he would sell the flour at $8.75 for cash. The broker went away, and soon returned, and said he would take the flour, which was shipped, and the next day a bill was forwarded to Butler and Co. with the words, 'Terms cash,' printed on the margin. On the following Monday one of the plaintiffs went to Portland, and upon ascertaining that Butler & Co. had failed, and that the flour had been attached, replevined it from the officer. In that case the court said: 'If goods are sold conditionally, and delivery made, according to the custom of the trade, before the conditions are complied with in expectation of compliance, the delivery is also conditional, and no title vests in the purchaser until the performance of the condition; and, if he steadily refuses compliance, the seller may recover the goods by action of replevin.' *Bauendahl v. Horr,* 7 Blatchf. (U. S.) 548. In *Russell v. Minor,* 22 Wend. (N. Y.) 659, the court said: 'Where, under a contract for the sale of chattels, a delivery of a portion of the property sold was made to the purchaser under an agreement that a note should be given for the whole quantity upon the delivery of the residue at a future day, the delivery of the first part was held to be conditional, and that, on the delivery of the residue, and the refusal of the purchaser to give the note, and to deliver up the first parcel on demand, an action of replevin for the wrongful detention might be sustained. Where goods are sold to be paid for on delivery, if, on the delivery being completed, the vendee refuses to pay for them, the vendor has a lien for the price, and may resume the possession of the goods; and if, during the delivery and before it is completed, the purchaser sells or pledges them to a third person for a valuable consideration, but without notice to the original vendor, the lien of the latter will not be affected, and he may recover them from such subsequent purchaser.' In *Palmer v. Hand,* 13 Johns (N. Y.) 434, the court stated: 'When goods are sold to be delivered by the vendor without any stipulation for credit, it is his right to demand payment immediately upon their delivery, and, payment being refused, he may reclaim the goods. Ordinarily this right to reclaim should be exercised promptly

after refusal of payment.' In *Morris v. Rexford,* 18 N. Y. 552, it was said: 'I consider it a proposition plain in principle and sanctioned by authority that a vendor may reclaim his goods after delivery upon a sale for immediate payment, if, the vendee, on getting the property in his possession, refuses to make the payment. If there be no term of credit expressed or implied in the dealing, the delivery in such cases is deemed to be conditional, and subject to revocation on the refusal or failure of the purchaser to pay the price.' Mr. Justice Strong, in the Elgee Cotton Cases, 89 U. S. 180, quotes approvingly the rule from Benjamin on Sales, which he regards as well settled law in England, and also this country: 'Where the buyer is, by contract, bound to do anything as a condition, whether precedent or concurrent, on which the passing of the property depends, the property will not pass until the conditions be fulfilled, even though the goods may be actually delivered into the possession of the buyer.' Benj. Sales (Corb. Ed.) 359, 397, and authorities there cited. The doctrine of this rule seems to be almost universally sustained by the American courts. We reach the conclusion in this case that, by the terms of the contract, there was a concurrent condition of payment upon the part of the buyer, to be performed before title passed to him. The buyer having notified the plaintiff below that he was unable to pay, he was entitled to the possession of the property, and there was no necessity of his making any reply to the buyer's letter in regard to his inability to pay, so that he exercised the right to reclaim the goods within a reasonable time, which it seems from the evidence he did. It follows from this view of the law that there was no error upon the part of the court below in instructing the jury to find a verdict for the plaintiff."

An examination of this record, and the evidence therein contained, will show a striking similarity between the case at bar and the case under consideration by the Kansas supreme court. The evidence shows that these goods were bought from the defendant in error on the express terms that they were to be spot cash—that is, cash upon the delivery of the goods; that the goods were delivered to the vendee at his usual place of business in the evening. On the following morning, the agent of the vendor went to the vendee and demanded payment. The agent was then in-

formed by the vendee that he would make payment as soon as he could check up the goods and ascertain if they corresponded with the invoice. On the next morning, the agent again went to the place of business of the vendee, but was unable to find him in. The evidence shows that for five or six mornings in succession he went to the usual place of business of the vendee, but failed to find him. Something like eight or ten days afterwards, he went to the vendee's place of business at an unusual early hour in the morning, and found him there, and then again demanded payment, was then told by the vendee that he could not make payment for the goods, and that the vendor could take the goods back, which proposition was then and there accepted by the agent of the vendor, and immediately he went to the wholesale house of the vendor for teams and wagons to take away the goods, and on the same day he returned with teams and wagons for the purpose of taking away the goods, and found them in the hands of the constable, who had levied on them by virtue of the attachment in this case, and the executions mentioned in the record. Now, the only difference between this and the Kansas case is that in that case there was no express acceptance of the proposition of the vendee to return the goods on account of inability to pay, while in this case there was an express acceptance. In the Kansas case the vendee wrote that he could not pay for the goods, and that they were the property of the vendor, and that he would put them in the hands of a third party. In the case at bar, the vendee told the agent of the vendor that he could not pay for the goods, and that he would turn them over, which proposition was accepted by the agent of the vendor, and, in that particular, we think, makes a stronger case than the Kansas case.

This same identical question was before the supreme court of Utah in the case of *Paulson v. Lyon,* reported in 73 Pac. 510. In that case the facts were that on September 10, 1901, at Salt Lake City, Utah, defendant, who was a jeweler, entered into a contract with plaintiff, who was a show-case maker, for the pur-

chase of certain articles to be used in defendant's jewelry store. The contract, so far as material here, was as follows: "This is to certify that I, the undersigned, have this day purchased from J. P. Paulson, of Salt Lake City, Utah, the following described articles: (Then follows an enumeration of the goods which are described as plate glass wall cases, counters with plate glass show cases, etc.) All of the above described articles to be made of the very best mahogany. In consideration of the above, I promise to pay J. P. Paulson, or order, the sum of nine hundred ($900.00) dollars upon delivery of these goods." The articles mentioned in the contract were furnished by the plaintiff, and placed in the defendant's store, and were ready for use November 26, 1901, at which time the defendant opened his store and commenced using them. Immediately after the goods were put in and ready for use, the plaintiff demanded payment for the same, and for about a month made repeated demands of defendant. for payment of the purchase price, but defendant, on one pretext and another, put him off until December 28, 1901, without paying the amount due or any part thereof, excepting $37.50, which was paid on or about December 24, 1901. On December 28, 1901, plaintiff commenced an action to recover possession of the goods. The case was tried by the court without a jury, and after hearing the evidence, which showed the foregoing facts, the court found all the issues in favor of the defendant, and ordered judgment in his favor, and dismissed the plaintiff's complaint. The first and third findings are as follows: "(1) That the defendant now is, and ever since about the 25th day of November, 1901, has been, the owner and in possession, and entitled to the possession, of all the goods and chattels described in the plaintiff's complaint. (3) That the defendant did not at any time withhold or detain any of said goods or chattels from plaintiff's possession to plaintiff's damage in any sum whatever." From this decision, the plaintiff appealed. The court says:

"The contract under consideration expressly provides that

the goods shall be paid for on delivery. The well-established rule is that where goods are sold, to be paid for on delivery, as was done in this case, the payment is a condition precedent to passing title, unless such payment is waived at the time, or subsequent to the delivery of the goods. 6 Ency. Law. (2d. Ed.) 456; 1 Mechem on Sales, 538; *Dudley v. Sawyer*, 41 N. H. 326; *Leven v. Smith*, 1 Denio (N. Y.) 571; *Hammett v. Linneman*, 48 N. Y. 399; *Dougherty v. Fowler* (Kan.) 25 Pac. 40, 10 L. R. A. 314 'To constitute a waiver there must not only be a delivery, but an intent not to insist upon immediate payment as a condition of the title passing.' *Globe Milling Co. v. Minneapolis Eleve. Co.* 44 Minn. 156, 46 N. W. 306; Mechem on Sales, 552. The important question in this case is: Does the record show such intent, or a state of facts from which the intent could be reasonably inferred? The record shows that, immediately after the goods were put in respondent's store and were ready for use, appellant demanded payment, and for nearly a month thereafter made repeated demands upon the respondent for the purchase price, and without any unreasonable delay commenced an action to recover the property. We have made a careful examination of the record, and fail to find any evidence whatever that tends to support the contention that Paulson said or did anything from which it can be inferred that he intended to relinquish his title to the property before it was paid for in full, or that Lyon understood that the title had passed to him. In fact, Lyon himself testified that he only accepted the goods temporarily, and nowhere in the record does it appear that either Paulson or Lyon treated or regarded the same as absolute and unconditional. This being an action at law, if there were any evidence whatever to support the foregoing findings, we would not disturb the judgment; but as the evidence is all one way, and shows that Paulson never waived payment, or relinquished his title to the goods, the case must be reversed."

Now, what is true in the Utah case is forcibly true in the case at bar. All the evidence in the case, in fact, the undisputed evidence in the case, is that this was a sale for spot cash, and the entire conduct and language of the defendant in error throughout this entire transaction negatives the proposition that he ever waived or intended to waive his right to demand cash payment as a condition precedent to the passing of title. We find: That

immediately on delivering the goods he demanded payment; that he went there on every morning for five or six consecutive mornings for the purpose of demanding payment; and that as soon as it was possible to secure an interview with the vendee he did demand payment, and then is informed that the vendee is unable to pay for the goods, and that he must take his goods back, which he then agreed to do. Now, there is no positive evidence in this record which shows whether or not, at the time of this agreement, the rights of any creditor had intervened. There is no evidence tending to show that this writ of attachment had been made by the officer at the time the vendee informed the vendor that he must take back his goods. But we think we have a right to presume that there had not, from the fact that no one testified that at the time of this conversation between the vendee and the agent of the vendor, wherein it was agreed that the vendor should take the goods back, that there was any writ of attachment, or that anybody else other than the vendee was in possession of the goods, but the evidence does show that, on the same day when the agent of the vendor returned with teams and wagons of the vendor to take possession of the goods under the terms of the agreement, he then found, for the first time, that the same was in the possession of the officer. Hence we think it a fair presumption of fact that the levy by the officer under the attachment shown by the record was between the time in the morning at 6:30, when the vendee and vendor had the conversation by which the vendee told the vendor that he was unable to pay, and the time in the afternoon, when the evidence shows the agent of the vendor went there to take possession of his goods. So we think it a fair presumption from the evidence in the case that at the time the agent of the vendor demanded payment of the vendee, and was informed by the vendee that he could not pay, and that the vendor must take his goods back, no levy had been made, and the rights of no third person had intervened.

We take it that the intervenors here, the attachment and ex-

ecution creditors, are in no better position, and have no greater rights than had the vendee, because our own supreme court, in the case of *Central Loan and Trust Company v. Campbell Commission Company*, reported in 5 Okla. 411 (bottom of the page), 49 Pac. 52 lay down this rule: "Where property is sold and delivered upon conditions that the title shall not vest in the vendee, unless the price agreed upon be paid within a specified time, the vendee has no attachable interest in the property until the performance of the condition." Drake on Attachment, § 246; *Buskmaster v. Smith*, 22 Vt. 203; *McFarland v. Farmer*, 42 N. H. 386, 19 Fed. Rep. 760; *Lucas v. Birdsey*, 41 Conn. 357.

Now under the law as laid down in this decision, and all of the decisions upon the subject that we are able to find, we think that the conclusion of the jury and the finding of the court that the plaintiff was entitled to recover his goods was correct, and, as the instructions of the court correctly state the law as laid down in this opinion, we think the instructions were eminently proper, and correctly stated the law.

The only remaining assignment of error is that the court erred in not numbering and marking its instructions, as required by the statute; but in making this contention we think that counsel for plaintiff in error has entirely overlooked the express provision of our statute. Wilson's Revised and Annotated Statutes of Oklahoma, volume 2, section 4462, page 1031, provides: "When the evidence is concluded, and either party desires special instructions to be given to the jury, said instructions shall be reduced to writing, numbered and signed by the party or his attorney asking the same, and delivered to the court. The court shall give general instructions to the jury which shall be in writing and numbered and signed by the judge if required by either party." Now, in this case the record does not disclose that any requirements or request was made by defendants or either of them for numbering of the instructions. The instructions were in writing, which is the essential thing. The

failure to number the instructions, there being no request, is not error, and at best, if error, would be harmless, and would be no ground for reversing the case, the instructions being otherwise correct.

Having examined the entire record, and finding no error therein, and believing that substantial justice has been done, the decision of the probate court is affirmed, at the costs of the plaintiffs in error.

Garber and Pancoast, JJ., absent; all the other Justices concurring.