# C. M. KEYS COMMISSION CO. v. BEATTY.

No. 3158. Opinion Filed August 25, 1914.

(142 Pac. 1102.)

1. SALES—Transfer of Title—Rights of Seller. Where K., a factor whose business is that of receiving, selling, and accounting for the proceeds of live stock in consideration of certain commission charges therefor, proposes and enters into an arrangement with W., whom K. believes to be a good judge of cattle, and a good trader and knows to be without means of his own, whereby W. goes out into the nearby country and purchases cattle upon his drafts, showing the number and kind of the cattle, and drawn in favor of the sellers upon K., in accord with such arrangement, and whereby K. undertakes to pay such drafts in consideration of anticipated commission charges, while W. is to have all other profits and be chargeable with all losses, and where W. so purchases and receives cattle from B., to whom he is a stranger, and who believes him to be the agent of K., upon such drafts and his statement to B. that K. "has the money," the title to .the cattle passes from B. upon condition that such draft is accepted and paid when duly presented; and, if payment of the draft when duly presented be refused, B. will have the right to sue for and recover the cattle or their proceeds from W. or any holder other than an innocent purchaser for value.

2. FACTORS—Trust Relation—Right to Follow Property. A factor holds the goods of his principal, or their proceeds when they have been sold, in the character of a trustee; and an equitable principle will permit the beneficiary to follow trust funds, whenever they can be identified, into the hands of any one but a bona fide purchaser for value, which principle is applicable to property or its proceeds held by a factor.

3. APPEAL AND ERROR—Harmless Error—Instructions. Where the conceded facts in a case show that the prevailing party would have been entitled, upon his request, to an instruction directing the jury to return the verdict that was returned, and that none other could properly have been rendered, errors, if any, of the trial court in the admission of evidence or in the giving of instructions are harmless, under section 4018, St. Okla. 1893, section 4791, Rev. Laws 1910, and section 5765, St. Okla. 1890.

(Syllabus by Thacker, C.)

*Error from County Court, Garvin County;*
*W. B. M. Mitchell, Judge.*

Action by J. R. Beatty against T. L. Wisdom and the C. M. Keys Commission Company, a corporation. Judgment for plaintiff against the corporation, and it brings error. Affirmed.

*Gilbert & Bond,* for plaintiff in error.

*Blanton & Andrews,* for defendant in error.

Opinion by THACKER, C.   Plaintiff in error will be designated as defendant, and defendant in error as plaintiff, in accord with their respective titles in the trial court.

The defendant was engaged as a factor in the business of receiving, selling, and accounting for live stock at the stockyards in Oklahoma City, for which it charged and received a commission as its compensation.   The plaintiff was a farmer stockman residing near Pauls Valley, Okla.   One T. L. Wisdom was a young man without means of his own, as defendant knew, who had theretofore commended himself and been by another also commended as a judge of cattle and a good trader at said stockyards to the good opinion of the defendant; and about December 1, 1910, the defendant, in consideration of the anticipated increase in its commissions, proposed and entered into an arrangement with Wisdom whereby the latter should and did go out into the nearby country and buy cattle for consignment to it upon drafts drawn by him upon it, in favor of the persons from whom he purchased, for the amount of the purchase price in each instance, and showing by indorsement thereon the number and description of such cattle (as, *e. g.,* "11 steers, 1 cow," etc.), and whereby defendant should pay and charge to the account of Wisdom all such drafts, receive and sell such cattle, deduct from the proceeds the expense of switching, yardage, and feed, together with its commission charges for the sales thereof, and credit the remainder of the proceeds to the account of Wisdom, so that all profits, excepting such commissions, should go to, and all losses should be sustained by, Wisdom.   The defendant directed Wisdom where and what class of cattle he should purchase; and, as a result of such purchases in the vicinities of Wanette and Asher, Okla., Wisdom had made a profit of some $227 or $265, which stood as a credit on his said account, when, early in January, 1911, he went into the vicinity of Pauls Valley to continue his purchases.   In this vicinity Wisdom purchased of several different owners upon such drafts and shipped to the

defendant cattle; and among others, he purchased of plaintiff on January 7, 1911, eleven steers and one cow upon such draft therefor to the amount of $460, and on January 9, 1911, three cows upon such draft therefor to the amount of $105, also, on this latter date, he purchased of R. B. Beatty one cow upon such draft therefor to the amount of $20. Wisdom, as consignor, on January 9, 1911, shipped these cattle to defendant, and they were received and sold by it on the morning of the next day. It appears that Wisdom so purchased and so shipped defendant, in all, ten cars of cattle; that defendant sold and credited his account with the net proceeds of all such cattle so received and sold; that it paid and charged his account with all such drafts so given, also a draft drawn by him on it for expense money to the amount of $5 and another to the amount of $10, ·except the three drafts given for the Beatty cattle and involved in this action, which drafts were not presented for payment until about a week after these cattle were received and sold, and upon which drafts payment was refused by it upon the ground that Wisdom's account was already overdrawn to the amount of $38. Afterwards the said $10 draft for expense money was paid, which increased the overdraft on that account to $48. The account itself, however, was not in evidence. It is stated without denial in the brief for plaintiff, and the testimony of defendant's manager of sales seems to be to the effect, that there was no loss suffered by Wisdom on the Beatty cattle; but it appears that the defendant had paid out the proceeds of these cattle with all the balance theretofore standing to the credit of Wisdom on its books and $38 in excess of such balance, when the drafts involved in this action were presented for payment.

Plaintiff testified that Wisdom told him that defendant "had the money" to pay for the cattle, and that he sold the cattle, not on the credit of Wisdom, who he thought was defendant's agent, and who was a stranger to him, but on the credit of the defendant itself; and it appears that Wisdom was in effect authorized by defendant not only to draw drafts on it, as he did, but by implication, to assure such drawees, as he in effect did, that such

drafts would be paid when presented to it, otherwise he apparently would have been without the means of purchasing and getting the immediate possession of the cattle; but it does not appear that anything further than already stated was said by Wisdom or the plaintiff in this regard; the plaintiff merely sold and delivered the cattle to Wisdom, and took therefor the drafts in the belief that defendant would receive the cattle, "had the money," and would pay the drafts when presented. Nothing further, it appears, was said about payment for the cattle or about extending credit to Wisdom or any one else.

The foregoing facts appear, not only to be uncontroverted, but to be in effect conceded.

It appears, under all the facts and circumstances of this case, that a sale for cash or its substantial equivalent was intended by both buyer and seller, although the delay in presenting the drafts militates somewhat against this conclusion, and ordinarily the question of intent of the parties in this respect is one of fact to be submitted to and decided by the jury.

Plaintiff became the owner of the draft given R. B. Beatty, and, having brought this action upon the three drafts, on April 14, 1911, recovered judgment for $585, the aggregate amount of such drafts. This recovery was under instructions of the trial court to the effect that the jury should return a verdict for plaintiff (1) if they found that Wisdom, in the purchase of the cattle, was the agent of the defendant, or (2) if they found that defendant had promised, prior to their issuance, to pay said drafts.

Under the facts and circumstances of this case, as hereinbefore stated, plaintiff's sales of cattle were, we think, as between the parties thereto, upon the implied condition that defendant "had the money" and would accept and pay the drafts when presented. 35 Cyc. 328-330; *First National Bank of Byars v. Griffin & Griffin,* 31 Okla. 382, 120 Pac. 595, 49 L. R. A. (N. S.) 1020; *McIver v. Williamson-Halsell-Frasier Co.,* 19 Okla. 454, 92 Pac. 170, 13 L. R. A. (N. S.) 696; *People's State Bank v. Brown,* 80 Kan. 520, 103 Pac. 102, 23 L. R. A. (N. S.) 824. See, however, *Kemper Grain Co. v. Alvin Harbour,* 89 Kan. 824, 133 Pac. 565, 47 L. R. A. (N. S.) 173.

The plaintiff might have sued for and recovered his cattle or their proceeds in the hands of Wisdom or any one else holding the same, other than an innocent purchaser for value. See authorities cited above. But, aside from any question of the passing of title from the Beattys, it seems clear that Wisdom was authorized by defendant to draw these drafts against the cattle for which they were given and against their proceeds after their sale by defendant, as well as against any balance standing on defendant's books to the credit of Wisdom.

A factor holds the goods of his principal, or their proceeds when they have been sold, in the character of a trustee; and an equitable principle permits the beneficiary to follow trust funds, whenever they can be identified, into the hands of any one but a *bona fide* purchaser for value, which principle has been applied to property or its proceeds held by a factor. 19 Cyc. 168, 169; 12 Am. & Eng. Enc. Law, 691, 692; *Cordell v. Hall et al.* (C. C.) 34 Fed. 866, affirmed 142 U. S. 116, 12 Sup. Ct. 154, 35 L. Ed. 956; *Gillespie v. Union Stockyards National Bank* (C. C.) 41 Fed. 231, affirmed 137 U. S. 411, 11 Sup. Ct. 118, 34 L. Ed. 724; *Evans-Snyder-Buell Co. v. First Nat. Bank of Amarillo*, 15 Tex. Civ. App. 163, 39 S. W. 213.

It thus appears, whatever view may be taken as to the relation between defendant and Wisdom, the defendant was bound to have held the net proceeds derived from its sale of the Beatty cattle in trust for the payment of the drafts in suit. Although defendant may not have known that these cattle had been purchased from the Beattys, nor which of the sixteen head in excess of the number purchased of one Mark Spears (for which it paid a similar draft or similar drafts) remained unpaid for after drafts covering all other cattle had been paid, it at least knew that it had received sixteen head of cattle for which there was an outstanding draft or outstanding drafts; and it is chargeable with knowledge of the identity of the Beatty cattle, as it appears that reasonable inquiry would have enabled defendant to identify and separate the Beatty cattle from those of Mr. Spears, with which they had been shipped to and been received by it.

Whatever might be determined as to the controverted facts in this case, the uncontroverted and apparently conceded facts make it clear that plaintiff is entitled to the verdict and judgment given (that is, upon request therefor, the court should have instructed such verdict); and, under our statutes (section 4018, St. Okla. 1893, section 4791, Rev. Laws 1910, and section 5765, St. Okla. 1890, for which section 6005, Rev. Laws 1910, has been substituted), possible errors either in the instructions of the court or the admission of evidence would not warrant the reversal of this case. However, it may be observed incidentally, it appears that the instruction on the question of agency was not only correct in form, but was requested by defendant; and, if there was error in giving the same, the defendant is precluded from urging such error.

For the reasons stated, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.