**ARNOLD v. GAMBREL (GAMBREL COT-
TON Co. et al., Interveners; STATE NAT.
BANK OF OKLAHOMA CITY et al., Gar-
nishees).**

No. 5914—Opinion Filed Sept. 11, 1917.

(167 Pac. 630.)

(Syllabus by the Court.)

**Appeal and Error—Sales—Retaking Goods—
Finding.**

Where H. & C. sell and deliver to G. cot-
ton to be paid for in cash, but G. tenders his
check upon a bank for the purchase price,
which is accepted as a means of such cash
payment after H. & C. have been informed
by the Bank of P. that the drawee bank stat-
ed to it over the telephone that G. had suf-
ficient funds on deposit to pay such check,
and the same would be paid if presented, and
where H. & C. thereupon indorse said check
to the Bank of P., which thereupon credits
the same to H. & C.'s deposit account, and
where, upon the presentation of such check
for payment, the drawee bank refuses pay-
ment upon the grounds that it was immedi-
ately theretofore served with garnishe esum-
mons in an action by A. against G., and does
not know whether it would be held liable to
the same amount upon such garnishee sum-
mons, and where the Bank of P. thereupon
notifies H. & C. of the nonpayment of such
check and charges the same back against
them upon their deposit account, and where
H. & C. are soon thereafter notified that the
amount of such check is charged back against
them, and that the amount to their credit in
the Bank of P., is insufficient to cover the
same, and where, a month later, the Bank of
P. intervenes in the case of A. against G.,
and claims an assignment by G. of the
amount of said check in the drawee and
garnishee bank, and the said cotton having
been seized under a writ of attachment at
the commencement of said action by A.
against G., where four months and a week
and four days thereafter H. & C. intervene
in said action and claim the title to said cot-
ton upon the grounds that they sold and de-
livered the same for cash, and thus upon con-
dition that said check should be paid, which
condition was not fulfilled, where, upon the
trial of said case, the Bank of P. dismisses
its petition and the plaintiff recovers judg-
ment by default against G., who absconded
when sued, and judgment against the drawee
and garnishee bank subjecting all the funds
of G. on deposit therein to its judgment
against G., and also recovered judgment
against A. and in favor of H. & C. for the
title to said cotton, the judgment will be af-
firmed against the contention of A. that the
title passed to G. at the time of said sale, and
that, if not, H. & C. had waived their right
by delay and laches to elect to retake said
cotton.

(a) The question as to whether title passed
under this state of facts depended upon the
intent of parties to the sale of the cotton,
and, this being a question of fact, the find-
ing of the trial court that it did not pass as
between H. & C. and G. or A. will not be
disturbed.

(b) H. & C. were entitled to elect within
a reasonable time whether they would retake
the cotton after it was certain that said
check would not be paid by the drawee and
garnishee bank, and under all the facts and
circumstances in this case, it cannot be here
said as a matter of law that their delay in
ascertaining their title was unreasonable,
and therefore a waiver of their right.

Error from District Court, Oklahoma
County; W. R. Taylor, Judge.

Action by J. W. Arnold against Ed Gam-
brel and the Gambrel Cotton Company, alias
the Gambel Cotton Company, with garnish-
ment by the State National Bank of Oklaho-
ma City, and an attachment of cotton in
hands of the Gulf, Colorado & Santa Fe
Railway Company, in which the Bank of
Paoli and Higgins & Campbell, a copartner-
ship composed of J. M. Higgins and ———
Campbell, intervened. Judgment for plain-
tiff, except as to interveners Higgins & Camp-
bell, who were adjudged entitled to the cot-
ton, and plaintiff brings error. Affirmed.

Stuart, Cruce & Cruce, for plaintiff in er-
ror.

Black, Kiskadden & Toney, for interveners.

THACKER, J. On November 9, 1912, the
plaintiff in error, who was plaintiff below, in
a conversation over a telephone, agreed to
purchase of Ed Gambrel or the Gambrel Cot-
ton Company, alias Gambel Cotton Company,
in which names he did business, 50 bales of
cotton; and some time thereafter, but not
later than November 14, 1912, the plaintiff, in
accord with that agreement, received and
paid a draft drawn upon him for $3,565.62
by the aforesaid Ed Gambrel or the Gambrel
Cotton Company, alias Gambel Cotton Com-
pany, who were the defendants in the trial
court, as the purchase price of such cotton.
To this draft there was attached a bill of
lading purporting to have been issued by the
Gulf, Colorado & Santa Fe Railway Com-
pany, and to carry the title to said cotton
from the defendants to the plaintiff, but
which, in fact, had been forged, according
to the allegations of plaintiff's petition, or
which had been "raised," according to what
plaintiff was told upon inquiry of the Gulf,
Colorado & Santa Fe Railway Company.

On November 14, 1912, plaintiff had discov-
ered that this bill of lading had been forged
and did not carry the title to these 50 bales,
or, so far as appears from the record, any
cotton whatever, and commenced this action
against the defendants for the said sum of

$3,565.62. At the same time the plaintiff caused a garnishee summons to be issued and served upon the State National Bank of Oklahoma City, which then owed the defendant, as one of its depositors, $1,590.62, and a writ of attachment to be issued, and served by the seizure of 22 bales of cotton in the hands of the Gulf, Colorado & Santa Fe Railway Company, as the property of the defendants.

On November 11, 1912, three days before this action was commenced, and therefore a very short time before or after plaintiff paid said draft for $3,565.62, Higgins & Campbell, a copartnership composed of J. M. Higgins and ——— Campbell, who are interveners in this action, sold Ed Gambrel, or the Gambrel Cotton Company, alias Gambel Cotton Company, the aforesaid 22 bales of cotton for $1,408.57, which was to have been paid in cash, but, as a means of obtaining the cash, accepted the defendants' check upon the State National Bank of Oklahoma City for that amount after they had been informed by that bank, through a telephone inquiry made for them by the cashier of the Bank of Paoli, that defendant had a sufficient amount on deposit to pay this check, and that the same would be paid if presented. This check was thereupon indorsed to the Bank of Paoli, and the amount of the same was credited to the deposit account of Higgins & Campbell.

On November 14, 1912, after the service of the aforesaid garnishee summons upon the State National Bank on that day, the said check given by the defendants to Higgins & Campbell as a means of paying said $1,408.57 for said 22 bales of cotton was presented to that bank and protested because of its refusal of payment. Payment was refused upon the grounds, as shown in the bank's answer as garnishee herein, that, notwithstanding the assurance it had given the cashier of the Bank of Paoli, it feared the $1,590.62 in the hands of that bank as a deposit to the credit of the defendants might be subject to be taken by the plaintiff upon such garnishment summons; and the Bank of Paoli promptly notified Higgins & Campbell of the nonpayment and protest, and charged the amount of the check back against them, of which they had notice at least as early as during the first days of the next month. They were then without sufficient funds on deposit to meet that charge, but this check was returned them on the 1st of the month.

On December 14, 1912, two days before the State National Bank answered said garnishee summons stating all the facts relating to this check, the Bank of Paoli intervened in this action, claiming that this check for $1,408.57, in view of the information given it by the State National Bank as aforesaid, operated as an assignment of the amount of the same from the defendants to this intervener and entitled the latter to $1,408.57 of said $1,590.62 as against the plaintiff's rights under said garnishee summons.

On February 25, 1913, the aforesaid Higgins & Campbell (who had had for some time the services of an attorney engaged to look after their interests in this matter) intervened, claiming the title to said 22 bales of cotton when attached by the plaintiff upon the grounds, as in effect alleged by them, that their sale of this cotton to the defendants was for cash and upon the condition of its payment, and that the check taken by them from the defendant as a means of obtaining this cash had been refused payment, so that no attachable title to this cotton had passed from them to the defendant when the same was seized upon the plaintiff's writ.

The plaintiff filed a general denial of the allegations in the petition of each of the interveners.

The defendants, who absconded about the time of the commencement of this action, made no appearance in this case; and, after service of summons by publication upon them, this case went to trial to the court without a jury on May 19, 1913, and was taken under advisement. On July 5, 1913, judgment by default was given against defendants, and also against the Bank of Paoli, which had dismissed its petition during the progress of the trial; but the interveners Higgins & Campbell were given judgment "for the value of or the return of the twenty-two bales" of cotton.

The plaintiff brings the case here for review upon the question of Higgins & Campbell's adjudged title and right to these 22 bales of cotton, and, as grounds for reversal, he urges: (1) That the evidence in behalf of these interveners was insufficient to support a finding that the title to these 22 bales of cotton did not pass from them to the defendants on November 11, 1912; (2) that Higgins & Campbell did not, with requisite promptness, assert their title and attempt to retake the property, if any title they had, but waived the same by unreasonable delay in this regard; (3) that the evidence for Higgins & Campbell does not sufficiently identify these 22 bales as the ones they sold the defendants; and (4) that the evidence shows that the bill of lading purchased and paid for by the plaintiff, although forged, covered and carried the title to these 22 bales of cotton, being "raised" so as to be a forgery only as to 28 bales.

The plaintiff's first contention presents a very serious and difficult question for decision; and his second contention presents a question almost, if not quite, as serious; but, as we understand the record in this case, there is no basis whatever for his third and fourth contentions, the cotton in question being not only identified in a measure by the "Diamond H" brand placed upon it at the time it was sold by Higgins & Campbell to the defendants, notwithstanding this is also the brand used by the plaintiff, but by a correspondence of the facts of its shipment with the facts of the shipment of the cotton sold by Higgins & Campbell, and also by a correspondence in weight of bales and numbers of gin tags, while there appears to be no evidence even tending in any degree to identify this cotton with the cotton, if any, included in this forged bill of lading, which is not in evidence.

Addressing ourselves to the first question urged by plaintiff, it may be stated at the outset that the question as to whether the title passed at the time of Higgins & Campbell's sale to defendants depends upon the intention of the parties as shown by the evidence in that regard.

The evidence here is that this sale was for cash, and a sale for cash is prima facie upon condition that the title to the property sold does not pass to the purchaser until the cash has been received, unless its receipt has been subsequently waived by the seller; and, in such a sale upon such a condition that has not been fulfilled, the seller may recover the property from the buyer or any party in possession who has no greater equity than the buyer, provided he properly asserts his right to do so within a reasonable time under all the facts and circumstances of the case. McIver v. Williamson-Halsell-Frasier Co., 19 Okla. 454, 92 Pac. 170, 13 L. R. A. (N. S.) 696; Masoner et al. v. Bell, 20 Okla. 618, 95 Pac. 239, 18 L. R. A. (N. S.) 166; First National Bank of Byars v. Griffin, 31 Okla. 382, 120 Pac. 595, 49 L. R. A. (N. S.) 1020; C. M. Keys Com. Co. v. Beatty, 42 Okla. 721, 142 Pac. 1102; Lehmann v. People's Furniture Co., 42 Okla. 761, 142 Pac. 986, L. R. A. 1915D, 355; Johnson v. Lankovetz, 57 Or. 24, 102 Pac. 799, 110 Pac. 398, 29 L. R. A. (N. S.) 709; Kemper Grain Co. v. Harbour, 89 Kan. 824, 133 Pac. 565, 47 L. R. A. (N. S.) 173; Frech v. Lewis, 218 Pa. 141, 67 Atl. 45, 11 L. R. A. (N. S.) 948, 120 Am. St. Rep. 864, 11 Ann. Cas. 545.

In McIver v. Williamson-Halsell-Frasier Co., supra (where articles of merchandise were sold and delivered under a contract for "spot cash," and the purchaser, upon receiving the merchandise, informed the seller that he would pay him as soon as he could check the same up, but, although the seller called at the buyer's place of business on five or six consecutive mornings after delivery for the price without finding him, when the latter was finally found, he told the seller that he could not pay for the goods and to take the same back, but, while the seller was seeking teams and wagons with which to take the same back, the same were seized under a writ of attachment in an action by a third party), this court affirmed a judgment allowing the seller to recover the goods in an action of replevin, holding:

"Where goods are sold and delivered upon condition that the title shall not pass to the vendee unless the price agreed upon be paid, the vendee has no attachable interest in the property until the performance of the condition."

In First National Bank of Byars v. Griffin, supra (where N. C. Bouie purchased and received delivery of cotton from Griffin & Griffin under a contract to pay cash therefor, and gave his check upon the First National Bank of Byars as a means of making such payment, the bank received the cotton and placed the value thereof to Bouie's credit, but refused payment of the check because Bouies's account was overdrawn), Griffin, as successor in right of Griffin & Griffin, was allowed judgment against both Bouie and the bank for the value of the cotton, the court holding:

"Where goods are sold for cash and delivered, the vendor taking the vendee's check for the price, which on presentment within due time is dishonored, title to the goods does not pass, and the vendor may recover the value thereof from the vendee and any party who has no greater equities."

In C. M. Keys Com. Co. v. Beatty, supra (where W. purchased cattle of B. and shipped them to K., a live stock commission company, giving B. his draft upon K. as a means of payment of the purchase price in accord with an agreement between W. and K., by the terms of which W. might draw upon K. for the purchase price of cattle bought to be shipped to it, and K. received and sold the cattle for W., applying the net proceeds to its own account against W., who had overdrawn, but refusing payment of the check, when afterwards presented), B. was allowed to recover the amount of the draft, which represented the value of the cattle in that sale, and did not exceed the net proceeds of the same in the hands of K., in an action against the latter, and in that case it was stated in the opinion:

"It appears, under all the facts and circumstances of this case, that a sale for cash or its substantial equivalent was intended by

both buyer and seller, although the delay in presenting the drafts militates somewhat against this conclusion, and ordinarily the question of intent of the parties in this respect is one of fact to be submitted to and decided by the jury."

In Lehmann v. People's Furniture Co., supra, which is relied upon by plaintiff in the instant case in support of his contention in this regard, although the terms of the sale required the payment of cash on delivery for the goods, the intent after delivery to give credit is made obvious by the opening up of an account against the purchaser for the purchase price and an attempt to collect the same for six months thereafter.

As a general rule, the seller must undoubtedly, as held in the Lehmann Case, promptly exert his right to retake the goods upon the breach of the condition which was to have been performed by the purchaser to complete the transfer of title to himself; but, as between the seller and the purchaser or those in possession with no greater equity than the purchaser, the seller may elect to retake the goods within a reasonable time in view of all the facts and circumstances of the case.

As stated in the L. R. A. editorial note to Frech v. Lewis, supra:

"The decisions upon this point depend largely upon the facts and circumstances of each case. The question is: Did the vendor act within a reasonabe time, to recover possession of the property; that is, within such a time as, taken in connection with other facts and circumstances, shows an intention to retain title until the condition of payment has been complied with?"

And in an editorial note to the same case in 11 Ann. Cas. 545, it is held:

"In some cases it has been held that whether the condition as to payment was waived in a particular instance is for the jury. Thus in Farlow v. Ellis, 15 Gray (Mass.) 229, the court said: 'The question then on trial in this case was whether the plaintiff had waived the condition of this sale, and manifested by his language or conduct an intention or a willingness to waive the condition and make the sale absolute, without having the satisfactory paper. When there is a condition made at the contract of sale favorable to the vendor, and solely for his benefit, he may, if he choose, waive it, and treat the contract as if no such condition had been embraced in it. Waiver is a voluntary relinquishment or renunciation of some right, a foregoing or giving up of some benefit or advantage, which, but for such waiver, he would have enjoyed. It may be proved by express declaration, or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage, or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive, still voluntary choice not to claim is of the essence of waiver, and not mere negligence, though from such negligence unexplained such intention may be inferred. The question of waiver therefore is a question of fact for a jury; it may be proved by various species of proofs and evidence, by declarations, by acts, and by nonfeasance or forbearing to claim or act.' To the same effect see Bishop v. Shillito, cited in 2 B. & Ald. 329, note; Young v. Kansas Mfg. Co., 23 Fla. 394, 2 South. 817; Mixer v. Cook, 31 Me. 340; Seed v. Lord, 66 Me. 580; George W. Merrill Furniture Co. v. Hill, 87 Me. 17, 32 Atl. 712; Powell v. Bradlee, 9 Gill & J. (Md.) 220; Scudder v. Bradbury, 106 Mass, 422; Haskins v. Warren, 115 Mass. 541 [514]; Luey v. Bundy, 9 N. H. 298, 32 Am. Dec. 359); Ferguson v. Clifford, 37 N. H. 86; Hart v. Boston, etc., R. Co., 72 N. H. 410, 56 Atl. 920; Osborn v. Gantz, 60 N. Y. 540; Parker v. Baxter, 86 N. Y. 593; Hall v. Stevens, 40 Hun (N. Y.) 578; Fleeman v. McKean, 25 Barb. (N. Y.) 474; Schmidt v. Kattenhorn, 2 Hilt. (N. Y.) 157; National Refining, etc., Co. v. Miller, 7 Phila. (Pa.) 97; Pitts v. Owen, 9 Wis. 152. In Ferguson v. Clifford, 37 N. H. 86, Fowler, J., said: 'Delivery, without anything being said, is not necessarily absolute. It is evidence of a waiver, and, with other circumstances, may be sufficient to authorize a jury to find a waiver of the precedent condition of payment of the stipulated price.' In Rathowsky v. Dunn (Sup. Ct. Tr. T.) 64 N. Y. Supp. 934, it was said: 'Whether the vendor, by delivering the goods without exacting the cash, waived that condition precedent, was one of fact for the jury, depending on the intention of the parties.' "

In the instant case it probably appeared to Higgins & Campbell during all the time of their delay in taking action to reclaim this property that it was uncertain as to whether this check for $1,408.57 would not be ultimately be paid, notwithstanding payment had been refused and the check protested. As will be seen from its answer herein, the garnishee bank was uncertain as to whether the plaintiff or the Bank of Paoli was entitled to the amount of money to the credit of the defendants called for by this check. In its answer it states that, about two days before the garnishee summons was served upon it, it informed the Bank of Paoli that the defendants had on deposit subject to their check a sum of money sufficient to pay the check in question, and that, if the same was presented, it would be paid, and further:

"That garnishee here offers to pay said moneys into court upon an order of the court to be made in said action, and asks the court to adjudicate as between the plaintiff in said cause and the intervener the Bank of Paoli, which is entitled to said funds," etc.

Higgins & Campbell were not entitled to retake the property sold except upon condition of the nonpayment of this check, and,

as the Bank of Paoli was still caiming that it was entitled to payment, it may well be understood what doubts Higgins & Campbell probably had as to their rights in this regard during their delay to assert their title; and, although there is room for difference of opinion as to this, we are inclined to the view that there was no reversible error in the holding of the trial court to the effect that their delay in doing so was not unreasonable and did not constitute a waiver of their right.

In the instant case there is certainly no evidence of any intention on the part of Higgins & Campbell, after they had learned of the protest of the check, to extend any degree of credit to the defendants, who had absconded, and, as the plaintiff had already violated their legal rights by attaching the property, which remained in statu quo during their delay in intervening, it is not perceived how plaintiff was prejudiced by such delay. In any event, we do not think it can be said as a matter of law that their delay in reclaiming the cotton was unreasonable under all the facts and circumstances of this case.

Judgment of the trial court affirmed.

All the Justices concurring, except HARDY and OWEN, JJ., who were not present.