## YARGEE et al. v. McMILLAN et al.

No. 15014. Opinion Filed Oct. 25, 1927.

Rehearing Denied Jan. 17, 1928.

(Syllabus.)

1. **Appeal and Error—Questions of Fact— Conclusiveness of Findings by Court in Law Action—Ejectment.**
Where a pleader asserts he inherited from

a deceased person certain land, that possession of same is held adversely to him, and prays possession, all his primary rights are cognizable at law. Such a suit is one for the recovery of specific real property, and properly triable to a jury. Where, by waiver or consent, it is tried to the court, the finding of fact made by the court, when brought here, is governed by the law rule.

## 2. Same—Question as to Identity of Indian Allottee.

The duties of the Commission to the Five Civilized Tribes in making the roll of citizens of the Creek Nation (one of the tribes) were fixed by congressional enactments. The tribal rolls were confirmed, and its duty as to persons appearing thereon was to place them on the final roll for an allotment of land, unless he or she was found to have died prior to April 1, 1899, or to be on the tribal rolls fraudulently. Where, long after enrollment of M. Y., who was found by the Commission to the Five Civilized Tribes to be on certain Creek tribal rolls, the question as to the person under consideration at the time the judgment of enrollment was entered, is one of fact. Where the finding of the trial court is that the Commission had under consideration a certain minor child, whose guardian was one W., and the evidence shows that such M. Y. actually lived at the time, that W. was her uncle, this court cannot hold that the finding was not reasonably supported by the evidence.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Actions between Sam Yarger and others and George McMillan and others, consolidated. Judgment for McMillan, and Yargee and others bring error. Affirmed.

G. R. Horner, R. C. Allen, and Rittenhouse & Rittenhouse, for plaintiffs in error.

N. A. Gibson, J. L. Hull, and T. L. Gibson, for defendant in error George McMillan.

G. C. Spillers and Frank Z. Curry, for cross-petitioners in error Johnson Proctor, Billie Proctor, Stella Proctor, and Frank Z. Curry.

McGuire & Marshall, for cross-petitioner in error C. H. Hubbard.

Robt. L. Imler, for cross-petitioner in error W. L. Connelly.

BRANSON, C. J. Error is prosecuted herein from the district court of Creek county. In stating the issues, necessity compels brevity, for a needless detail in discussion of the numerous angles of this lawsuit would lead the reader into inextricable confusion. Where figures appear herein in parentheses, they indicate the page of the voluminous record.

There were three suits in the district court, No. 3422, No. 4209, and No. 4224. When cause No. 3422 was called for trial, causes 4209 and 4224 were consolidated therewith (3129-3130). It was stipulated by all parties that all allegations of the pleadings against which a specific defense had not been pleaded should be taken as traversed by each and all adversary parties (3127). Parties too numerous to name came into or were brought into the suits, asserting alleged interests from diverse sources. Many defaulted and many disclaimed, whereupon judgment went against them. In naming the parties to the respective suits in the three succeeding paragraphs, we confine ourselves to those parties left before the district court at the trial in whose favor judgment was entered, or against whom judgment was entered, and who prosecute error here. All others were by that judgment eliminated.

Paragraph 1 (as to parties and pleadings): Sam Yargee, Alvey Yargee, and Hettie Yargee (Beets) filed cause 3422. They sued certain defendants, none of whom are necessary to name under the elimination statement of the preceding paragraph. When such defendants are referred to herein, it will be as "defendants in cause 3422." Plaintiffs plead:

"That they have the legal title in fee simple and the equitable estate in and to the following described real estate (describing it—ours), the same being the allotment of Monday Yargee, deceased, and are entitled to the immediate possession thereof.

"Plaintiffs further state that the defendants have denied, and still deny, plaintiffs' title and right to the possession of said premises, or any part thereof, and unlawfully withhold the possession thereof from the plaintiffs.

"Plaintiffs derived title to said real estate in the following manner: The said Monday Yargee, a full-blood citizen of the Creek Tribe of Indians, was duly enrolled as such opposite roll No. 7846, on the 23rd day of May, 1901; that certificate of selection for the above-described premises was duly issued to her on the 27th day of June, 1902; that afterwards, to wit, on or about the 1st day of February, 1904, the said Monday Yargee died, single, intestate, and without issue surviving her; that she left no brothers or sisters, or descendants of any brothers or sisters, or father or mother, but left surviving her these plaintiffs, who were sons and daughters of Alex Yargee; that the said Alex Yargee was a brother of Susie Yargee, the mother of said Monday Yargee; that these plaintiffs are the sole and only heirs of said Monday Yargee, deceased.

"Plaintiffs further state that proper conveyance to all of the above described allotment was duly made and delivered to the said Monday Yargee during her lifetime, to wit, on or about the 20th day of April, 1903, and November 6, 1905, copies of said conveyance are hereto attached and made a part of this petition marked Exhibit 'A,' 'B,' 'C.'"

"Plaintiffs further state they have been damaged in the sum of $——— by the said defendants unlawfully holding said possession.

"Wherefore, plaintiffs pray judgment for the possession of said premises, and for $——— damages for withholding possession thereof. and for their costs and other proper relief."

William Yargee and Emma Yargee (Asbell) filed therein a pleading by way of intervention, claiming as if they had been parties plaintiff in the petition. These parties are included when reference is made to "plaintiffs in cause 3422".

George McMillan intervened and pleaded he was the owner of the legal title to the allotment patented in the name of Monday Yargee, and further pleaded:

"That the said Monday Yargee died in what is now McIntosh county, in the state of Oklahoma, in the year 1901, intestate and unmarried and without issue or descendant of issue, and that she had never been married. That the said Monday Yargee left as her next kin and sole heir Isaac Walter, her brother, who was duly enrolled and recognized as a citizen of the Creek Nation of Indians and is still so recognized. That the said Monday Yargee and the said Isaac Walter were children of the same mother, a Creek Indian woman known as Semehoke, or Susie."

He prayed possession as against defendants and that plaintiffs in cause No. 3422 take nothing.

Paragraph 2 (as to parties and pleadings): Suckie Coonhead, Hettie Crowles, C. H. Hubbard, R. C. Mason, Joseph Ardizzone, and F. J. Ossenbeck filed cause No. 4209. They sued the same parties as defendants as in cause No. 3422. They pleaded the land in question was patented to Monday Yargee, that she died about 1904 without having been married or leaving descendants, that she left surviving Warcoche, a brother of Susie Yargee, mother of the said Monday Yargee, as her sole heir: that thereafter in 1904 the said Warcoche. uncle of the said allottee. died leaving Suckie Coonhead and Hettie Crowles, his daughters, as his only heirs at law, through whom the other parties plaintiff in this cause (4209) derived their alleged interest. Their prayer is:

"Wherefore the plaintiffs prayed that they be decreed to have the right to the possession of the land above described; and that their title be quieted as against the defendants and each of them."

The other relief prayed by them was entirely dependent upon whether this prayer could be granted.

Paragraph 3 (as to parties and pleadings): James A. Sellers and B. B. Jones filed cause No. 4224. They sued Charles Hubbard, referred to in the record as C. H. Hubbard. They pleaded that they were the owners of the land here described, and that Hubbard should be enjoined from drilling a well upon the same, or in anywise molesting their rights and possession. In this cause the defendant, Hubbard, filed no answer: but it must be noted, as stated in paragraph 2, supra (as to parties and pleadings), that he was one of the plaintiffs suing defendants in said cause, claiming rights therein outlined, and the question of the relief sought in this cause was not directly determined except upon the pleadings of Hubbard against the defendants in cause No. 4209. This is only important for counsel for Hubbard in their brief make the contention that the action as to him was of purely equitable cognizance; whereas, as outlined in paragraph 2, supra, he, with Suckie Coonhead and Hettie Crowles, had as against the defendants pleaded they were the owners of the legal and equitable title, praying right to possession. Before trial Suckie Coonhead, one of the plaintiffs in said cause No. 4209, died; the cause was revived (800) in the name of her husband, Wylie Coonhead, and Willie Coonhead, a minor, represented by J. H. Hill as guardian. This cause (803) was after revivor dismissed by Hettie Crowles, and the said successors in interest to Suckie Coonhead. The said cause No. 4209 then remained as C. H. Hubbard, R. C. Mason, Jos. Ardizzone, and F. J. Ossenbeck, as plaintiffs, against, as aforesaid. the same parties as defendants as in cause No. 3422. The petitions of the plaintiffs in the said causes No. 3422 and No. 4209 were specifically answered. the defendants traversing the allegations therein made.

The defendant in error George McMillan came into cause No. 3422 and pleaded that he owned the legal title by virtue of a deed from one Isaac Walter (8). He pleaded the allotment and patent to Monday Yargee: that the said Monday Yargee died after enrollment. never having been married, and leaving surviving no heirs, except a brother, Isaac Walter, a citizen by blood of the Creek

Nation; that the mother of said allottee was one Semehoke, or Susie; that the father and mother of the allottee died long before allotment. His prayer was for possession as against the defendants in said named causes 3422 and 4209, and that he be adjudged the owner thereof, his title quieted, etc.

By way of answer and cross-petition (225) Billy Proctor, Johnson Proctor, and Stella Proctor came into this suit and set up that they were entitled to a one-eighth interest in the land in question, so allotted to Monday Yargee; pleaded the enrollment and the allotment: that Stephen Barnett was her father, and that while Stephen Barnett died prior to the said Monday Yargee, that through his line of ascent there was one David Chupco, who was the father of one Ellen Proctor, who in turn was the mother of these cross-petitioners; and that they owned jointly a one-eighth interest in the land; and concluded:

"Wherefore these defendants pray that the court decree that the said George McMillan, intervener, had no right, title or interest in and to the said one-eighth undivided interest in and to said land, and that they be decreed to be the owners and entitled to the immediate possession," etc.

One Frank Z. Curry claimed an interest through the Proctors, and his interest depends upon the right of the Proctors to participate.

One W. L. Connelly by way of answer and cross-petition (324) adopts the answer and interplea of Givins and others (57), which, among other things pleaded that Monday Yargee's mother was a Creek Indian woman, by the name of Susie; that she was the only child of Sallie; that Sallie was never married, but was the mother of Susie; that the said Sallie, grandmother of Monday Yargee, had a sister, Thlesiah, and a brother, Fushutchu Fixico, or Birdcreek, and that by mesne conveyances the heirs through this line conveyed to the said Connelly the real property (326). Simon Colbert came into suit by way of answer and cross-petition, asserting an inheritance through one Peggy, an alleged sister of the alleged father of Monday Yargee (578), and prayed that he be decreed entitled to the possession of an undivided interest in said real estate.

The pleadings of all the parties are in accord to this extent to wit: That Monday Yargee was a citizen of the Creek Tribe of Indians; that she appeared upon the tribal rolls; that she was placed by the Commission to the Five Civilized Tribes upon the final roll of citizens of the Creek Nation, compiled by it, which final roll was required to be made by certain acts of the national Congress as the first step in carrying out the policy of Congress in allotting the tribal land in severalty to the recognized members of the tribe.

While cause No. 4224 was included in the order consolidating, all parties in said cause had pleaded the alleged facts on which they based their respective prayers for relief in the other two causes. Therefore, in reality there were only two causes consolidated, to wit, 3422 and 4209, in which issues were joined. A jury was waived and trial was had to the court. Judgment went against the plaintiffs in both causes, the court finding that the intervener, McMillan, owned the title. The defendants in 3422 and 4209 (the same parties) do not prosecute error here, and they are not therefore named.

The Yargees filed a petition in error in this court with case-made attached. The Proctors, and Curry claiming through them, filed a cross-petition in error. C. H. Hubbard filed a cross-petition in error. W. L. Connelly filed a cross-petition in error. These are briefed. A cross-petition in error is filed by Simon Colbert. A cross-petition in error was filed by Ada Allen Kehoe. The last two cross-petitions in error are not briefed, and they are therefore taken as abandoned.

Status of the pleadings when the cases were consolidated: On consolidation, we find that the plaintiffs in error, the Yargees, were standing on the allegations of their petition, which pleaded that they were heirs of Monday Yargee, and entitled to the immediate possession of the land, for an accounting, and that their title be quieted against the defendants in possession and all other parties. The Proctors and Curry were standing on their answer, in the form of an answer to the petition of McMillan in intervention, which asserted that they inherited an interest in the land and were entitled to the possession of the undivided interest claimed by them. C. H. Hubbard asserted, as against the defendants in causes 3422 and 4209, that the Indians, through whom he claimed, owned an interest and that he, through them, should be adjudged entitled to the possession of the premises and his asserted interest be quieted against all the parties. The pleadings of W. L. Connelly were to the same effect.

The intervener and cross-petitioner, McMillan, deraigned his title as aforesaid through one Isaac Walter. He pleaded that

Isaac. Walter was the sole heir of the allottee; that he was a citizen of the Creek Nation · of full Indian blood, and that he had sold by conveyance, duly approved by the proper county court, the land to Mc-Millan. His prayer was that plaintiffs, the Yargees, that plaintiffs C. H. Hubbard and W. L. Connelly, and the plaintiffs by way of cross-petition, the Proctors and Curry, take nothing, but that he be adjudged as a matter of law the owner of the title to said land and entitled to the immediate possession thereof as against the defendants in possession. The allegation of all the pleadings disclosed through whom the pleader claimed.

It is asserted by some of the cross-petitioners in error that this is an action of purely equitable cognizance and this court has authority to weigh the evidence and enter judgment upon our determination as to the weight of the evidence under the equity rule.

We do not think this suggestion merits a lengthy discussion. If the allegations of the plaintiffs in error in their petition to the effect that they inherited this land from the allottee are true, they own the title as a matter of law and not by reason of an equitable principle. They plead they are entitled to the possession by reason of having inherited the land. If they are entitled to the possession, they are so entitled as a matter of law and not by reason of any equitable principle. The truth of their having inherited as a matter of law and as of their being entitled to possession as a matter of law lies at the very basis of their prayer for other relief in their petition. If the cross-petitioners in error, the Proctors, were entitled to any relief, it was by reason of their allegation that they inherited an undivided interest in the land and that the same was held adversely to them. If the cross-petitioners in error, C. H. Hubbard and W. L. Connelly, were entitled to any relief, it was by reason of the allegation that the Indians, through whom they assert their right, were the heirs at law of the allottee. If this was true, it was true as a matter of law, and the relief they sought in their pleadings was against those in possession, and that relief was obtainable on legal principles and not on principles of equity. The pleadings of plaintiffs in error and the cross-petitioners in error were in ejectment primarily; the other relief prayed was secondary and dependent upon the primary relief. Mitchell v. Gafford, 73 Okla. 152, 175 Pac. 228; Gill v. Fixico, 77 Okla. 151, 187 Pac. 474; Bald-

ridge v. Sunday, 73 Okla. 287, 176 Pac. 404; Strawn v. Brady, 84 Okla. 66, 202 Pac. 505; McDonald, Adm'r, v. Strawn, 78 Okla. 271, 190 Pac. 558; Warner v. Coleman, 107 Okla. 292, 231 Pac. 1053.

The actions by the plaintiffs in error and the cross-petitioners in error were for the recovery of specific real property, and properly triable to a jury. The cases are too numerous to tabulate which hold that this court in such cases has no authority to review and weigh the evidence, but its only power is to determine as a matter of law whether or not there was any evidence reasonably supporting the judgment of the trial court. At the base of this line of authorities is a constitutional provision of this state (section 20, art. 7). It is:

"In all issues of fact joined in any court all parties may waive the right to have the same determined by a jury; in which case the finding of the judge upon the facts shall have the force and effect of a verdict by jury."

This court in commenting upon the said section of the Constitution in the case of Schock v. Fish, 45 Okla. 12, 144 Pac. 584, in effect said that it prevented the Supreme Court from weighing the evidence in a law action tried to the court without a jury. Our only power or province in such cases is to determine whether the evidence before the trial court, including the reasonable intendments to be drawn therefrom, reasonably tended to support the judgment entered by that court.

In this particular case, some of the numerous briefs filed seem to proceed upon the theory that this court is a trier of facts and that this court can take the record and try the alleged facts in this case. Such a presentation entirely overlooks the limitation fixed by the law itself upon this court. This court can only review alleged errors of law of the trial court from which the appeal is taken. The rule controlling here is discussed in the following cases: Beard v. Herndon, 84 Okla. 142, 203 Pac. 226; Anicker v. Doyle, 84 Okla. 62, 202 Pac. 281; Lieberman v. Merring, etc., 84 Okla. 168, 203 Pac. 1045; Gaines Bros. & Co. v. Citizens Bank of Henryetta, 84 Okla. 265. 204 Pac. 112; Nelson v. Golden, 84 Okla. 29, 202 Pac. 308; Bradley Metcalf Co. v. McLaughlin, 87 Okla. 34, 208 Pac. 1032; Gayer v. Pearce, 86 Okla. 102, 206 Pac. 822; Dennison v. Phipps, 87 Okla. 299, 211 Pac. 83; Griffith Durney Co. v. · Alton Mercantile Co., 92 Okla. 54. 217 Pac. 1047; Westbrook v. Rhodes, 92 Okla. 149, 218 Pac. 875; Producers Supply Co. v. Render, 95 Okla. 212,

218 Pac. 304; Page v. Roddie, 92 Okla. 236, 218 Pac. 1092; Dustin Grocery & Feed Co. v. Lucas, 91 Okla. 11, 215 Pac. 417; Nation v. Stone, 92 Okla. 18, 217 Pac. 1031; Rock v. Robinette, 92 Okla. 123, 218 Pac 808; Squires v. Wesco Supply Co., 93 Okla. 138, 219 Pac. 895.

The plaintiffs in error, the Yargees, seemingly concede this, for they say (reply brief, page 2):

"In the last analysis of this case the following questions must be decided by this court: First. Whether there was any evidence reasonably tending to support the findings of the trial court and the judgment appealed from. Second. Whose application the Dawes Commission (the Commission to the Five Civilized Tribes—ours) had under consideration at the time they enrolled the allottee Monday Yargee? Third. Who were the heirs of the person enrolled as Monday Yargee?"

We agree that a determination of these questions ends this lawsuit. At this point we advert to the judgment of the trial court. The judgment was against plaintiffs in error and cross-petitioners in error. It found that their allegations were not true. In this connection, before undertaking to discuss the controlling questions, supra, the rule in actions for the recovery of specific real property, or ejectment, should be stated. It is that the plaintiff must recover on the strength of his own title, and not on the weakness of his adversary, and that he must establish his title as against the world in order to prevail. As to the other parties against whom affirmative relief was sought by the petitioners in error and cross-petitioners in error, the pleading of McMillan was, in ordinary parlance, this:

"He stepped into the case and in effect said that neither the plaintiffs, the interveners, cross-petitioners, nor the defendants own the legal title; 'I own it'."

If he did own it, plaintiffs were not entitled to judgment against the defendants or anyone else. The trial court found against the plaintiffs in 3422 and 4209, against the defendants in each case, and found affirmatively that McMillan's grantor was the heir of the allottee. If there was evidence under the rule, supra, reasonably tending to support this finding or the reasonable inferences from which supported this finding, then this court has no power, under the authorities cited above, to reverse the judgment entered by the trial court.

Our inquiry, therefore, is limited, not by our making, but by the making of the law itself, to a determination as to whether there was such evidence before the trial court. The question is whether or not this court can reverse the judgment which found against the plaintiffs in error and the cross-petitioners in error. That is the extent of their concern, for on their allegations of error we cannot review the propriety of the affirmative relief granted the intervener as against the defendants in causes Nos. 3422 and 4209, for the defendants in said causes filed no cross-petition in error here.

The Act of June 10, 1896 (29 Stat. at L. 321), confirmed the Indian tribal rolls of citizens. The Act of Congress of June 28, 1898 (30 Stat. at L. 495), the Act of March 1, 1901 (31 Stat. at L. 861), the Act of June 30, 1902 (32 Stat. at L. 500), each had provisions as to making the final roll of citizens on which land was allotted to the Indians. The record in this case discloses that each of the Five Civilized Tribes, of which the Creek Tribe was one, had various rolls of the recognized citizens of the tribe. These rolls were compiled by officers of the tribe, authorized by the legislative authority of the tribal government.

There were political subdivisions of the Creek Nation, known as towns. There were 47 towns in the tribe. From them representatives in the House of Kings (the upper lawmaking body) and the House of Warriors (the lower lawmaking body) were elected. Each town had a name. Each citizen of the Creek Nation belonged to some particular town—that to which his mother belonged. The town rolls were made by officers of the town, and it was on these rolls that moneys due the citizens of the tribe were from time to time paid out. The said Act of June 28, 1898, among other things, provided:

"Said commission (meaning the Commission to the Five Civilized Tribes) is authorized and directed to make correct rolls of the citizens by blood of all the tribes, eliminating from the tribal rolls such names as may have been placed thereon by fraud or without authority of law, enrolling such (as were on the tribal rolls—ours) only as may have lawful right thereto and their descendants born since such rolls were made. * * *"

The said act further provided that:

"They (meaning the Commission to the Five Civilized Tribes) shall have access to all rolls and records of the several tribes, and the U. S. court in the Indian Territory shall have jurisdiction to compel the officers of the tribal governments and custodians of such rolls and records to deliver same to said commission. * * * The rolls so made, when approved by the Secretary of the Interior, shall be final and the persons whose

names are found thereon with their descendants thereafter born to them shall alone constitute the several tribes, which they represent."

It will thus be seen that the Commission to the Five Civilized Tribes was directed to make correct rolls of citizens of said tribe; that the tribal rolls were confirmed except as to persons whose names were placed thereon fraudulently, and as to the Creek Tribe the persons recognized as enrolled citizens of such tribe living on April 1, 1899, were required to be placed on the final roll.

The record in the instant case discloses that in performing its duties the Commission sought to have the Indian citizens file formal applications for enrollment. When such applications were made, the applicant's tribal enrollment as found and identified by the Commission was placed on his card. The duty of the Commission under the acts of Congress was not ended by determining the right to enrollment of those who made formal application, but the Commission had before it the numerous tribal rolls of the different towns in the Creek Nation, and the persons whose names appeared on those town rolls were entitled to be placed on the final rolls, unless the Commission found in the exercise of its judicial power they had died prior to April 1, 1899, or were on the tribal roll fraudulently. Many of the citizens refused to make application to the Commission for enrollment. As to such inquiry was made where they were found listed on the tribal roll of any particular Creek town.

The record in the instant case shows that no formal application was made for the enrollment of Monday Yargee. This girl appeared on the Kialigee town roll compiled in 1890 by the officers of said town. It was on this roll and from this roll that said Commission derived its first information as to this individual. This roll was before the Commission. The said roll showed her to be an orphan, that one Warcoche was her guardian and that when the money, to wit, $29 due to each citizen, was paid on said roll, the said roll showed that Warcoche, as guardian of the said Monday Yargee, received the money due her. The next roll of Kialigee town was made in 1895. Her name appears upon that roll in Kialigee town. The Commission gave the person so found upon the tribal roll in Kialigee town of 1890 field card No. 2728.

Plaintiff in error, the Yargees, state (brief, page 9):

"We have heretofore stated that this was an arbitrary allotment. The Dawes Commission in making this arbitrary allotment turned to the 1890 and 1895 rolls of Kialigee town and stamped thereon the above field number after the name of Monday Yargee (C.-M. pp. 2657-2686). The allotment in controversy must therefore go to the person whom the Dawes Commission had under consideration at the time they stamped this field number thereon and to whom that name belonged. United States v. Porter, 260 Fed. 1; Norton v. Larny, 266 U. S. 511."

Following the second question in the brief of plaintiffs in error quoted, supra, the trial court had to determine who the Dawes Commission had under consideration at the time it listed for final enrollment Monday Yargee. For under the authority of said case of U. S. v. Porter, 260 Fed. 1, an allotment went to the person, or his heirs, who was adjudged to be entitled to be enrolled under the name the enrollment was made. The plaintiffs in error say that they were related and the next of kin to a full-blood Creek woman enrolled on the final rolls under the name of Amanda Gaino. They assert that this relative was the same person as Monday Yargee, to whom the instant allotment was made, or, in other words, that Amanda Gaino and Monday Yargee was one and the same individual.

The tribal enrollments introduced in evidence, which were before the Commission to the Five Civilized Tribes, were examined by the Commission when Amanda Gaino made application for enrollment. She was placed on field card No. 2215. She appears on the final roll as No. 6757, Amanda Gaino, wife of Yabe Gaino, full-blood, and identified on the tribal roll of 1890, Tuckabatchee town, under the name of Janatie Stephen. She is identified on the 1895 roll, Tuckabatchee town, as Manda Barnett. The record introduced shows that her mother belonged to Tuckabatchee town and was on the rolls of said town, that her father belonged to Tuckabatchee town, and was on the tribal rolls of such town. She selected as an allotment for herself certain land which lies in what is now Hughes county, for which patent was issued to her. No one in this case disputes that Amanda Gaino was accounted for on the 1890 roll properly under the name of Janatie Stephen. Why she was on the 1890 roll as Janatie Stephen does not appear from the record, for we never hear of her name in subsequent records as "Janatie Stephen." The plaintiffs in error insist that this is the same person who appeared on the 1890 roll, Kialigee town, as Monday Yargee. Why this Indian should be en-

rolled in 1890 in Tuckabatchee town, where she admittedly belonged, as Janatie Stephen, and at the same time be enrolled in Kialigee town as Monday Yargee, the record does not explain; and yet to sustain the contentions of the plaintiffs in error the trial court must have found that Janatie Stephen on the 1890 Tuckabatchee town roll was Monday Yargee on the 1890 Kialigee town roll. The argument is that there was a similarity between Amanda or Manda Barnett on the 1895 roll, and Monday, but it does not appear that when the roll of Tuckabatchee town was made in 1890 this girl bore the name of Amanda at all, but at least that year was going by the name of Janatie. When she took the name of Manda or Amanda does not appear, except that she is shown on the 1895 roll as Amanda Barnett.

Whom did the Dawes Commission have in mind when it made the enrollment of Monday Yargee, and the arbitrary allotment to Monday Yargee?

What was there before the Commission to even indicate that Janatie on the 1890 roll was Monday Yargee on the 1890 roll in a different Creek town? The record fails to show that the Commission had anything to indicate that.

But is it reasonable from the record to infer that Monday Yargee on the 1890 roll, Kialigee town, was the individual found by the trial court to be the sister of Isaac or Isaac Walter? Again we quote from the brief of the plaintiffs in error (page 28):

"On page 2 of the brief of McMillan, counsel makes the following statement: 'No one, though, disputed the heirship of Isaac Walter, McMillan's grantor, to the daughter of Susie, Warcoche's sister.' We agree with counsel in this. Isaac Walter had a half sister and their mother was Semehoke, a sister of Warcoche."

This admission is at least in part what a large number of witnesses testified to; but it does not fully admit the effect of the testimony.

It cannot be disputed from the record that McMillan's grantor had a sister, that the mother of this sister had a brother named Warcoche. A tribal enrollment of Warcoche and his family is in the record. The first tribal enrollment was in 1882, Kialigee town, Creek Nation. The evidence from witnesses who knew this family is to the effect that the sister of Warcoche was named Susie or Semehoke. The evidence also shows that this sister of Warcoche who belonged to Kial-

igee town was the mother of Isaac Walter, who appeared on the 1890 roll, Kialigee town, as "Isaac," along with his grandmother, with whom the evidence showed he lived at that time, and whose name was Peyarkee. Isaac Walter made formal application to the Dawes Commission for his enrollment. At that time his testimony was taken by the Commission to the Five Civilized Tribes. It was in 1903. (Record, 2638 to 2640.) It showed that he was about 18 years of age at that time; that his mother died when he was very small; that his grandmother, Peyarkee, raised him; that he belonged to Kialigee town; that he had a sister, but she had died long before that; that he was a full-blood, and gave his testimony through the official interpreter of the Dawes Commission. There is no dispute in this record that the sister of Isaac belonged to Kialigee town. Several witnesses testified that her name was Monday. Isaac testified that his grandmother, Peyarkee, told him that her father's name was Yargee. It is admitted by the plaintiffs in error that this sister of Isaac Walter was the niece of Warcoche. Adverting again to the tribal roll. we point out that the Commission took the name from the 1890 roll. That roll, introduced as intervener McMillan's exhibit No. 22, dis losed to the Commission that Monday Yargee was an orphan; that Warcoche was her guardian, and that he was the same Warcoche that appeared on the Kialigee town roll. (There was one "Monday" also on that roll. She was given no final enrollment—the Commission evidently concluding that that name was a duplicate of "Monday Yargee" [1026-1028].) The evidence of numerous citizens is to the effect that Susie or Semehoke, sister of Warcoche, died at Warcoche's house prior to 1890 and was buried in his yard; that she left a child named Monday, and a child named David, who is admitted in this record to be David Holden, a brother of Isaac Walter. So, when we answer the question, suggested by plaintiffs in error, and determined against them by the trial court, whom the Dawes Commission had under consideration when this girl on the 1890 roll was placed on the final roll, we find that the tribal roll before said Commission showed that the guardian of this girl was Warcoche. There is evidence that her mother's name was Susie or Susie Yargee. There is nothing in the record to indicate that there was any reason why Janatie Stephen should be enrolled as the ward of Warcoche under the name of Monday Yargee. On that roll of 1890 a payment was made in the sum of $29. The tribal roll before the Dawes Commission of Kialigee town showed that War-

coche as guardian drew that money belonging to Monday Yargee. Opposite this girl's name on the tribal roll was stamped by the Dawes Commission the final enrollment card, field No. 2728, which bears her final enrollment No. 7846. Monday Yargee also appears on the roll of 1895, and the Monday Yargee first found on the 1890 roll was found by the Dawes Commission to be the same person as Monday Yargee on the 1895 roll. The $29 payment was made to Janatie Stephen (Amanda Gaino) in Tuckabatchee town under the name of Janatie Stephen, and it is admitted that she is the same person who appeared on the 1895 roll Tuckabatchee as Amanda Barnett. While the evidence from several witnesses is to the effect that occasionally Indians belonging to one town in the Creek Nation got enrolled in a town other than that to which they belonged, this was rare. The evidence fails to reveal any case where a citizen appeared on two different towns under different names on two successive tribal enrollments made in different years, as contended by plaintiffs in error occurred to their relative, Amanda Gaino.

Referring again to the admission: Isaac Walter had a sister; she belonged to Kialigee town; her name was Monday; she was a niece of Warcoche. The Commission must have had in mind that this Monday Yargee that was placed on the final roll as Monday Yargee was the girl for whom Warcoche was acting as guardian, as shown by the tribal roll itself. There is not an intimation to be found in the record that Warcoche ever acted as guardian or drew money for any orphan on the 1890 roll, except those of his deceased sister, the mother of Monday and Isaac.

Chapley Yarhola, an officer of Kialigee town in 1895, was placed on the witness stand by the plaintiffs in error. He testified that he wrote the name "Monday Yargee" on the 1895 roll; that he was town clerk; that "Monday Yargee" he placed on the 1895 roll was the niece of Warcoche. While it is true he stated that she married Yabe Gaino, several pages of his testimony shows he did not know who the wife of Yabe Gaino was. One or the other of these statements is untrue. Nobody contends that Yabe Gaino's wife, Amanda, a relative through whom the plaintiffs in error claim, was the niece of Warcoche. His testimony bore out what appeared from the 1890 tribal roll—that this girl was the ward of Warcoche; it bore out the testimony of many other witnesses—that this girl was the daughter of Susie, deceased, a sister of Warcoche

(1120-1130). This witness further testified that Warcoche's sister was named Susie. His testimony (1129) is:

"Q. Did any one there ever tell you that (referring to Monday Yargee) she was Warcoche's niece when you were making up the rolls? A. Oh, Warcoche's niece? Q. Yes? A. Yes, sir; when I made up the roll the town chief told me that Monday Yargee was Warcoche's niece."

The entire evidence read from the record on the pages indicated discloses that this witness never did know the father or the mother of Yabe Gaino's wife.

Again, it being admitted by plaintiffs in error, and it is not disputed by any of the cross-petitioners in error, that Isaac Walter had a sister, that this sister was the niece of Warcoche, that she belonged to Kialigee town, certainly she should have appeared upon the Kialigee town rolls. There is no contention made that there is anyone to be found on the Kialigee town rolls after the birth of this child who answered anywise as the sister of Isaac Walter, except Monday or Monday Yargee found on the 1890 roll and the 1895 roll. The "Monday Yargee" appearing on the 1890 roll was identified as the same "Monday Yargee" appearing on the 1895 roll.

One witness, who was town warrior and officer of Kialigee town in 1895, said the town king told him that this girl was the niece of Warcoche. The testimony of Martha Anderson (885), Ed Leader, Lucy Beavers (879), Barney Leader (902), Bunny McCosar (912), Billy Green (969), Waite Thomas (927), Isaac McGirt (939), Kentucky Wesley (962), Walter Fields (952), Jesse Lone (969), and Nancy Coachman (1230), is to the same import—that this niece of Warcoche was Monday Yargee, her mother being Susie, a sister of Warcoche; that she was a Kialigee. The Dawes Commission, opposite the final roll number of this girl, identified her as a Kialigee, gave the name of her mother as Susie Yargee, a Kialigee.

The trial court, as the trier of the facts, had a right, as a matter of law, to believe this evidence. The trial court did believe it; it certainly reasonably supports the finding and conclusion made, if in fact any other finding would not have been against the weight of evidence. This conclusion denies the claims of the petitioners and cross-petitioners in error. The judgment of the trial court is affirmed.

PHELPS, LESTER, HUNT, CLARK, RILEY and HEFNER, JJ., concur.

Note.—See under (1) 4 C. J. p. 876, §2853; 35 C. J. pp. 157, 158, §28; 2 R. C. L. p. 224; 1 R. C. L. Supp. p. 459; 4 R. C. L. Supp. p. 94; 5 R. C. L.. Supp. p. 84; 6 R. C. L. Supp. p. 76. (2) 4 C. J. p. 879, §2853; 31 C. J. p. 490, §30.