## LOWE v. HICKORY.

No. 23592.   Nov. 12, 1935.

Rehearing Denied Dec. 17, 1935.

Second Petition for Rehearing Denied
March 24, 1936.

W. W. Pryor, James W. Rodgers, and Dudley E. Buell, for plaintiff in error.

Anglin & Stevenson, for defendant in error.

WELCH, J.   On and prior to March 30, 1928, the defendant, Addie Hickory, was in possession of certain land claiming to own the same as heir of the allottees, Simpson Hawkins and Bunnie Hawkins.   On that date James Hawkins and several others, as plaintiffs, instituted this action to recover such lands, they claiming certain inherited interests therein.   Thereafter, on the 11th day of April, 1928, Nicey Lowe, intervener, filed her petition in intervention, she also claiming to be an heir and seeking to be adjudged the owner of the Bunnie Hawkins allotment, and to have possession of it and of an interest in the Simpson Hawkins allotment.

No further reference will be made to the original plaintiffs in the action, as they seem to have abandoned their claims of relationship, and the action proceeded between Nicey Lowe, intervener, on the one hand, and Addie Hickory on the other hand.

The relationship of the defendant to the deceased allottees is not disputed.   The right of the intervener to recover is based upon her claim that from October, 1907, until April, 1908, she and Bunnie Hawkins lived together as common-law husband and wife, and that when Bunnie Hawkins died in April, 1908, she survived him as his widow; that thereafter, in August, 1908, a son was born who died four days after birth; that therefore she is entitled to inherit as the sole surviving heir of Bunnie Hawkins.   That claim of the existence of the marital relation is controverted by the defendant.   And it is clear that if this claim of the intervener is not established, the defendant is entitled to prevail.   All of the parties are Creek Indians.

The cause was tried in the district court at considerable length, and that court found the issues in favor of the defendant and rendered judgment accordingly.   From that judgment the intervener appealed, and urges that the findings and judgment of the trial court are contrary to the evidence.

In this case the rule is clearly applicable that a general finding for the defendant is a finding against the opposite party upon every material issue, and is a finding of each specific thing necessary to sustain the general finding.   That rule is so stated in many decisions of this court.

The record is voluminous.   Several witnesses testified for each party.   Each of the several witnesses testified to some facts more or less supporting the theory of the party calling the witness, but the testimony of each witness is at times contradictory, and at times indefinite and uncertain. Much of the testimony was given in answer to leading questions, which adds to our difficulty in analyzing the proof presented on the vital question as to whether the relation of husband and wife existed between Bunnie Hawkins and Nicey Lowe, the intervener.

In checking the record in this case we are at once convinced of the wisdom of the rule which recognizes the fact that the trial judge, who sees the witnesses, observes their demeanor, and hears their testimony,

is in better position to judge as to the true facts than the appellate court, making its review by an examination of the record.

The intervener herself testified to facts sustaining her claim. She stated that she and Bunnie were "married"; that "her father and uncle were present at the time," and that her uncle "talked," as did also her father. This would indicate some kind of private ceremony had in connection with the beginning of her claimed relation with Bunnie Hawkins. At the time of the trial her father had died. Her uncle was a witness, but he did not detail any such meeting or occasion between Nicey and Bunnie. The enrollment record introduced in evidence shows that Nicey Lowe was enrolled as being seven years of age in 1902. This would indicate her age in 1907 was twelve years. She established her birth date as September 5th, which might indicate, with the enrollment record, that she was thirteen during the six-month period she claimed to have lived with Bunnie as his wife, and at the time in August, 1908, when she said a child was born. In the course of the trial, over a period of days, she was asked several questions as to her age when she "married" Bunnie. Her first statement was that she was 25 years old. A few questions later she was specifically asked whether she was 25 years old or 15 years old, and stated again that she was 25 years old when she "married" Bunnie. In a later stage of the trial, that is, some days later, she was interrogated again and stated she was 15 years old when she married him. Nicey Lowe had a guardian, one Johnson Tiger, appointed by the county court of Hughes county in the year 1911. She said as a witness that her marriage to Bunnie occurred after Johnson Tiger was appointed her guardian. Undisputed facts are that Bunnie died about April, 1908, and that some years later the intervener, Nicey Lowe, married one Edmond Hobiah, and following his death some years later, married one Eunah Johnson.

From the death of Bunnie Hawkins in 1908, until the commencement of this action in 1928, the defendant continued to possess and claim his land, and although the intervener knew about this, she made no claim as being an heir or the surviving widow of Bunnie Hawkins, nor asserted any claim or right to his property until the commencement of this action.

Reference is made to those portions of the testimony of the intervener to point out some of the discrepancies in that part of the testimony upon which she seeks to reverse the findings of the trial court.

Various other witnesses made statements tending in part to corroborate portions of the testimony of the intervener. They were persons who lived within a few miles or several miles of the place where Nicey Lowe lived, and, of course, they were not so well advised as to details as was the intervener herself. There was some corroboration of the intervener as to the fact that she gave birth to a child, and as to the child's death and burial, and as to the fact that she was seen in company with Bunnie Hawkins. While various statements of the witnesses were contradictory and indefinite, we may well understand that when we bear in mind that the witnesses were testifying in 1931 as to facts claimed to have existed in 1907 and 1908, and since during that period there has been no intervening claim that this marriage relation existed between Nicey Lowe and Bunnie Hawkins, the testimony as to details of the action of the parties coming under the observation of disinterested neighbors might be expected to be somewhat indefinite.

There is no dispute as to the circumstances of the death and burial of Bunnie Hawkins. He was critically ill at the home of a neighbor a short distance from the home of Nicey Lowe's father. An uncle living 10 or 15 miles away learned of his illness and with two other men went to the place and took Bunnie in a wagon to the home of the uncle. It is uncertain where the intervener was at the time. The uncle and the two men with him did not see her at the place where Bunnie was ill, although she stated she was there; she further stated that Bunnie was moved from that place to his uncle's home without her knowledge. Bunnie was critically ill and died three or four days later, and was buried at or near the home of his uncle where he died. The intervener did not attend the funeral, and in fact did not know where he was buried, for the reason, as stated by her, that they never told her where it was. She also explained her failure to attend the funeral as being due to the fact that she did not know of his death until after he was dead and buried.

Various witnesses testified as to details contradictory to the statements and claims of the intervener, and inconsistent with the existence of any kind or character of matrimonial relation between Bunnie and Nicey, and from a careful consideration of the entire record we are forced to the conclusion that we can say no more from the

record than that the relationship claimed by the intervener may have existed, as she claimed, or might have never so existed at all, as contended by the defendant.

In 1920, some years prior to the commencement of this action, a determination of the heirship of Simpson Hawkins was had in the county court of Hughes county, in which the defendant, Addie Hickory, claimed to be the sole heir of Simpson Hawkins and Bunnie Hawkins, and upon trial it was so determined. And also in 1920 a determination of the heirship of Bunnie Hawkins was had in the county court of Hughes county, wherein the defendant, Addie Hickory, claimed to be the sole heir of Bunnie Hawkins. In both cases the trial was had and Addie Hickory was adjudged to be the sole heir. In both cases notice was given to the unknown heirs and claimants, but the intervener, Nicey Lowe, did not appear in either case or present any claim of her marital relation with Bunnie Hawkins. She urges that those determinations are not binding upon her for failure to file in those cases proper affidavits for publication service upon unknown heirs or claimants. It is not necessary to decide whether such determinations are binding upon intervener and bar her from asserting her claims here presented, but it is worthy of notice that during the period of about 20 years the defendant, Addie Hickory, continued to possess and occupy the land of Bunnie Hawkins, claiming to own the same as the sole heir, and seeking to establish her claim by judicial determination of heirship, and that no claim or contention was presented by or for intervener until she appeared in this action in 1928, and asserted her matrimonial relation with Bunnie Hawkins, alleged to have existed from October, 1907, to about April, 1908.

In this connection, and in view of all the facts and circumstances shown, we must give controlling weight to the trial court's finding for the defendant.

In determining this issue between the intervener, Nicey Lowe, and the defendant, Addie Hickory, the controlling elements were; One, the credibility of the witnesses; and, two, the weight and value to be given their testimony. These were questions exclusively for the trial court. Falls City Clothing Co. v. Sweazea, 61 Okla. 154, 160 P. 728; Lowrance v. Henry, 75 Okla. 250, 182 P. 489.

In Beams v. Step, 116 Okla. 291, 244 P. 775, we held that the credibility of witnesses is a question of fact for the trier of facts, whether court or jury.

We held that an appellate court cannot pass on the credibility of witnesses in Love v. Kirkbride Drilling Co., 37 Okla. 804, 129 P. 858, and in Muskogee Electric Traction Co. v. Rye, 38 Okla. 93, 132 P. 336.

When the whole record is considered, it cannot be said that the trial court's findings for the defendant are not supported by competent evidence, or that such findings are against the clear weight of the evidence.

This action in this court has been treated, to some extent, as if it were an action of purely equitable cognizance. Some cases are cited in the briefs, and have been heretofore considered by the court, which announced the rule in such cases. However, the consideration of this case, or the treating of it as a case of purely equitable cognizance, is inexact and erroneous. The matters presented to and determined by the trial court involved the legal rights of the parties as distinguished from the right of either party to equitable relief. The action was one upon the part of the intervener to recover specific real property. The issues of fact were triable before a jury in the absence of an express waiver. Section 350, O. S. 1931. The rights of the parties were fixed by law; that is, if the intervener was the surviving widow of Bunnie Hawkins, either by virtue of a ceremonial marriage, or by reason of a marriage consummated between and resulting from the acts and intentions of the parties without any ceremonial marriage, then her right to recover this land was fixed by law. Upon the other hand, if the marriage relation did not exist, then the right of the defendant to inherit the land and to recover in this action was fixed by law. Neither of the parties needed to resort to the equity power of the court, nor did the court have authority to unsettle or determine the legal rights of the parties to this land by equitable rules or maxims, the rights of the parties being fixed by law.

In York v. Trigg, 87 Okla. 214, 209 P. 417, this court held:

"Where the rights of parties to an action are clearly defined and established by law, equity has no power to change or unsettle such rights. The maxims of equity may be invoked to protect an existing right, but are unavailable to create a right where none exists. Equity follows the law."

There is nothing in the trial court's record to indicate that intervener's claim is based upon any right to equitable relief, or that the trial court undertook to determine anything other than the legal rights of the parties. The record shows that the

trial of the issues of fact before a jury was expressly waived, and that the cause was submitted to the court for trial and determined by the court, on the issues of fact, as well as the issues of law. In such cases the rule is that the findings of the trial judge have the same force and effect as the verdict of a jury and are binding on the appellate court, and, in the absence of errors of law appearing at the trial, will not be disturbed by this court on appeal, if there is any competent evidence reasonably tending to support the same.

In City of Chickasha v. Looney, 36 Okla. 155, 128 P. 136, a cause triable to a jury, but tried to the court upon waiver of jury, we held that this court in such a case would not review the weight of the evidence or the credibility of witnesses.

When a cause is considered by this court on appeal, the weight to be given the judgment of the trial court should turn on whether the cause in the trial court was one properly triable by the court, or one properly triable to a jury. It was so held in Mitchell v. Gafford, 73 Okla. 152, 175 P. 227, and in Halsell v. Beartail, 107 Okla. 103, 227 P. 392. The latter case was an action to determine the heirship of a deceased Indian allottee and to recover possession of land or an interest therein (as in the case at bar), and this court, speaking through Mr. Justice Cochran, said:

"* * * This was an action for the recovery of specific real property under section 532, C. O. S. 1921, and either party was entitled to a jury. We conclude, therefore, that the sufficiency of the evidence should be determined in accordance with the rule applied in jury cases. * * *"

Certiorari was denied in Beartail v. Halsell, 266 U. S. 628, 45 S. Ct. 126, 69 L. Ed. 476.

We have repeatedly held that in such cases a finding by the trial court has the force and effect of a jury verdict as to facts. See Deming Investment Co. v. Love. 31 Okla. 146, 120 P. 635; In re Byrd, 31 Okla. 549, 122 P. 516; Gates Oil Co. v. Prairie Oil & Gas Co., 159 Okla. 288, 15 P. (2d) 56; Smart v. Billings, 169 Okla. 26, 35 P. (2d) 923.

And that finding of fact by the trial court is conclusive on appeal. Brewer v. Black, 5 Okla. 57, 47 P. 1089; Cassidy v. Saline County Bank, 14 Okla. 532, 78 P. 324; Arnold v. Gambrel, 64 Okla. 283, 167 P. 630; Bounds v. Gooch, 92 Okla. 260, 219 P. 105.

And that in determining whether there is evidence to sustain the findings, only the evidence and the inferences therefrom most favorable to the findings is to be considered. Myers v. Dennison, 104 Okla. 208, 230 P. 742; Nelson v. Hamra, 127 Okla. 141, 259 P. 838. Note the following rule pronouncements by this court, in substance:

Where a jury is waived, the findings of the court are entitled to the same weight and consideration that would be given to a verdict by the jury, and if there is any evidence including any reasonable inferences tending to support the findings, the Supreme Court will not reverse for insufficient evidence. Forman v. Needles, 78 Okla. 105, 188 P. 1087.

Where, by waiver or consent, action for possession of land is tried to court, court's finding of fact is governed, on appeal, by law rule (Const. art. 7, sec. 20). Yargee v. McMillan, 129 Okla. 48, 262 P. 682.

All parties may waive the right to have fact issues determined by a jury, in which case the judge's findings shall have the same force and effect as the jury's verdict in view of Const. art. 7, sec. 20. Schaff v. McGuyre, 87 Okla. 41, 208 P. 263.

In action to recover possession of land, where plaintiff fails to establish case by legal and competent evidence, or where there is conflicting evidence, verdict for defendant will not be reversed. Mandler v. Harvey, 119 Okla. 185, 249 P. 391.

Where a cause has been tried to a jury, and there is any state of facts, reasonably deducible from the evidence, which under any theory of law applicable to the issues and facts will authorize the judgment, it will not be disturbed. McFadyen v. Masters, 11 Okla. 16, 66 P. 284.

Inferences of fact which there is evidence to support will sustain the verdict. T. S. Reed Grocery Co. v. Miller, 36 Okla. 134, 128 P. 271.

A verdict reasonably supported by evidence will not be disturbed on the weight of evidence, though the appellate court might not have reached the same conclusion. American Fidelity Co. of Montpelier, Vt., v. Echols, 56 Okla. 228, 155 P. 1160, L. R. A. 1916D, 1176.

Where from the evidence reasonable men might not reach same conclusion, verdict will not be disturbed. Wolverine Oil Co. v. Kingsbury, 66 Okla. 271, 168 P. 1021.

If there is any evidence including any reasonable inference which the jury might have drawn reasonably tending to support the verdict, the Supreme Court will not reverse for insufficient evidence. Allen v. Shepherd, 69 Okla. 47, 169 P. 1115.

In a law case, where there is competent

evidence or justifiable jury inferences reasonably supporting the judgment rendered, the Supreme Court will not disturb it. Baker-Hanna-Blake Co. v. Paynter-McVicker Grocery Co., 73 Okla. 22, 174 P. 265.

It is for the jury in the trial court to determine the weight of the testimony. Hammett v. State, 42 Okla. 384, 141 P. 419, Ann. Cas. 1916D, 1148.

The weight of the evidence is not a question for the appellate court. Key v. Hill, 93 Okla. 64, 219 P. 308.

Effect and weight to be given inconsistent or contradictory testimony are questions of fact for trier of fact, whether court or jury. Beams v. Step, 116 Okla. 291, 244 P. 775.

A judgment in a law case, where there is competent evidence or inferences that the jury can justifiably draw therefrom, which reasonably support the judgment, will not be disturbed. Modern Woodmen of America v. Broskay, 95 Okla. 135, 218 P. 690.

Verdict based on physical facts and circumstances contrary to evidence, which, with evidence, regardless of lack of rebuttal evidence, would permit men of ordinary intelligence to draw different conclusions, will not be disturbed on appeal. Marland Refining Co. v. Snider, 125 Okla. 260, 257 P. 797.

And in such an action it is also a settled rule that if the items of the evidence and the circumstances and the intermediate facts are such that rational men might reasonably differ as to the true ultimate facts, the verdict of the jury, or findings of the trial judge on waiver of jury, will not be disturbed on appeal.

It is true that many of the statements of Nicey Lowe, testifying for herself, were not disputed by direct and positive testimony. Many of the things stated were such as could not either be corroborated or disputed by direct or positive testimony of any witness. But in her own testimony there were contradictions and inconsistencies as to other material details. It is also true that various statements of other witnesses in her behalf were not directly denied or disputed by positive testimony. But there were other statements of inconsistent facts. All these things were entitled to consideration by the trier of the facts, either court or jury, in determining the credibility of the witnesses, and the weight to be given the testimony, and in arriving at a final conclusion as to the true facts.

Even the most positive statement of a witness may be absolutely disregarded by court or jury, if it is sufficiently improbable, or is sufficiently discredited by other inconsistent testimony or physical facts, or established circumstances. So a portion of the testimony of a witness may be accepted by the trier of facts, without giving full weight to all of the other testimony of the same witness, when such other portion thereof is fairly determined not entitled to full weight, on account of the many items naturally and necessarily considered in determining the weight of evidence.

There are cases in which wholly circumstantial evidence may be accepted as establishing facts, contrary to the positive declaration of a witness as to those facts.

In Reed v. Scott, 50 Okla. 757, 151 P. 484, we held that positive testimony presented on one side might in a proper case be rejected, and circumstantial evidence presented on the same point by the other side might be wholly accepted.

In Marland Refining Co. v. Snider, 125 Okla. 260, 257 P. 797, this court, speaking through Mr. Justice Riley, said:

"The jury is the sole judge of the credibility of the witnesses and of the weight of the evidence, and where positive evidence has been introduced to disprove a certain state of facts and no direct evidence has been introduced to rebut the same, yet the physical facts and circumstances tend to contradict such evidence, and the testimony, when taken together with the physical facts and circumstances, is of such a nature that men of ordinary intelligence might draw different conclusions therefrom, the verdict of the jury, based upon such physical facts and circumstances and contrary to the positive evidence, will not be disturbed on appeal. Reed v. Scott, 50 Okla. 757, 151 P. 484."

In Smart v. Billings, 169 Okla. 26, 35 P. (2d) 923, the plaintiff sought to recover lands. Upon trial to the court, waiving a jury, she suffered an adverse judgment on general findings by the court. It is apparent that the conclusion of the trial court there was contrary to positive testimony in behalf of the plaintiff as to her age at the time of signing a deed. But the delay of several years in seeking relief, and other inconsistent circumstances established, were held to be sufficient to justify the trial court in giving to that positive testimony only the weight and value which he concluded it should have. This court there made no effort to determine the credibility of the witnesses or the weight to be given their testimony and to substitute our conclusion for that of the trial court, but affirmed the judgment, holding in paragraphs 2 and 3 of the syllabus, as follows:

"Where a jury is waived and the cause is tried to the court and the finding of the court is general, such finding is a finding of every special thing necessary to be found sustaining the general judgment, and such finding, when reasonably supported by the evidence in the case, is conclusive on the Supreme Court upon all doubtful and uncertain questions of fact so found.

"Where a jury is waived and the cause tried to the court, the judgment of the court must be given the same force and effect as the verdict of a properly instructed jury, and if there is any competent evidence reasonably tending to support the judgment of the trial court, the same will not be disturbed on appeal."

In the case at bar the issue was squarely presented to the trial court upon the contradictory claims of the parties. Much evidence was presented, and that court determined the issues against the intervener and denied her any recovery.

The rules established by these many prior decisions of this court guide us, and require that we follow to but one conclusion, that is, that the findings of the trial court in favor of the defendant, Addie Hickory, must be sustained.

The legal defenses, including the assertion of the prior judicial determinations of heirship as a bar, need not be considered, since they could not be material unless the intervener established her claim that the judgment of the trial court was legally contrary to the evidence as to the facts.

The judgment of the trial court must be, and is, affirmed.

OSBORN, V. C. J., and BAYLESS, BUSBY, PHELPS, CORN, and GIBSON, JJ., concur. McNEILL, C. J., concurs in result. RILEY, J., dissents.

McNEILL, C. J. (specially concurring). I concur in the conclusion reached by the present opinion, but do not agree with the reasons advanced in the opinion whereby the former opinion, rendered on November 27, 1934, is set aside.

A jury trial was waived and it is very apparent from the record that both parties treated the action as equitable in its nature not only in the trial below but in their briefs filed in this court. It was considered as an equitable action by this court in the former opinion. The petition for rehearing, filed December 26, 1934, did not contend otherwise. In the supplemental brief of defendant in error, filed on the 17th day of May, 1935, it is therein said:

"Though all the parties to this appeal at first treated the action as equitable in its nature, the action is not purely equitable for the reason the question as to whether or not a common-law marriage in fact existed between Bunny Hawkins and Nicey Lowe comes under the rule governing an action at law, aside from the other features of the case, and is to be governed by the rule that where there is a conflict in the testimony as to the facts the judgment of the trial court upon such facts will be given the effect of a verdict of a jury upon conflicting testimony, and if reasonably supported by the evidence, will not be disturbed by the court. * * *

"This case has been treated as an equity case by other briefs and while there are many equity matters in it, the question of common-law marriage is purely a question of law and not of equity. * * *

"The facts and circumstances in this case fail to comply with the law necessary to establish a common-law marriage and there was not only failure to give satisfactory proof to show the existence of a common-law marriage, but there was ample evidence to the contrary to support the finding and judgment of the court, not only by a fair preponderance of the evidence, but also of the clear weight thereof."

Counsel for plaintiff in error, in their reply to the supplemental brief on petition for rehearing, states:

"This cause was originally instituted for the purpose of determining the heirs of Bunny Hawkins and Simpson Hawkins. The pleadings in the cause show this very clearly. Knowing the animosities of the district court, we would not have waived a jury had not all the parties known and considered the case an equity one. Defendants in error admit that they considered this an equity case and they presented the matter to this court on an equity theory. When they lost they changed their theory. This court knows that a party cannot submit a case on the theory and then after he has lost his case, turn to some other theory with the hope of gaining a victory."

The petition of plaintiffs alleged that the defendant, Addie Hickory, was in possession of the premises and wrongfully withheld the same from the plaintiffs.

Nicey Lowe was permitted to intervene in said action. She filed an answer and petition in intervention and cross-action. In paragraph 4 thereof she states as follows:

"Intervener states that said plaintiffs and the defendant claim some right, title, interest, equity or estate, in and to the

premises involved herein adverse to the right, title, interest and estate of this intervener, but that such claims are spurious and void as against this intervener, and are inferior to the title of this intervener, and that said plaintiffs and defendant are withholding possession of said lands from this intervener, and this intervener is entitled to have her title quieted and possession of said land restored to her; that due demand for such possession has been made and refused.

"Wherefore, premises considered, intervener prays judgment of this court against the plaintiff and defendant and each, and all of them as follows:

"(a) That intervener be adjudged, decreed and declared to be the owner in fee simple, of, in and to and entitled to the immediate possession of the, .* * * the entire allotment of her husband, Bunny Hawkins, deceased, and an undivided three-fourths interest in and to the, * * * the allotment of Simpson Hawkins, deceased, all in Hughes county, Oklahoma:

"(b) That the plaintiffs and defendant and each, all and every of them, and all those claiming, by, through or under them be declared, adjudged and decreed to have no right, title, interest, equity or estate in and to said premises; and

"(c) That the said plaintiffs and defendant and each and all of them and all those claiming by, through or under them, and all of the instruments under which they claim, be canceled, annulled, and expunged from the records of Hughes county, Oklahoma, as clouds upon the title of this intervener; and

"(d) That said plaintiffs and defendants and each and all of them, and all those claiming by, through or under them, be forever barred and enjoined from asserting or attempting to assert any right, title, interest, equity or estate in and to said premises adverse to the right, title and possession of this intervener."

The defendant, Addie Hickory, filed an answer alleging that she had been in continuous, open, notorious, exclusive, and uninterrupted possession of said property since April, 1908, and that the plaintiffs had never been in possession of the same; that heirship had been determined in the estate of Simpson Hawkins, deceased, and that on July 18, 1920, judgment was entered in the county court of Hughes county, the court having jurisdiction of the settlement of said estate, decreeing her as the only heir of said decedent. Said defendant also alleged that on May 3, 1920, she filed in the county court of Hughes county her petition praying for the determination of the heirs of Bunney Hawkins; that on June 18, 1920, judgment was entered in said cause decreeing said defendant to be the only heir at law of said Bunney Hawkins; and that on December 15, 1921, the plaintiff made and executed and delivered to Addie Hickory, defendant, her quitclaim deed, conveying to said Addie Hickory any and all interest she might have in said estate, which deed was duly approved by the county court on November 8, 1921.

It will be observed that this deed and the decrees of the county court covered the lands involved herein.

Said defendant also alleged that said deed and certified copy of the order approving the same was on file in the office of the county clerk of Hughes county, Okla.

The intervener, Nicey Lowe, in her reply to the answer of the defendant, in substance, alleged that the decrees of the county court of Hughes county, determining heirship in the estates of Simpson Hawkins and Bunnie Hawkins, above referred to, were void, for the reason that the county court was without jurisdiction over the intervener, because the petitioner for the determination of heirship in those estates failed to file an affidavit for publication against unknown heirs before the notice was published.

With this contention of the intervener I agree. The Act of Congress of June 14, 1918, conferring upon the probate courts of the state of Oklahoma jurisdiction to determine heirship of allottees of the Five Civilized Tribes, with reference to the petition for determination of heirship, provides:

"Provided further, that said petition shall be verified, and in all cases arising hereunder service by publication may be had on all unknown heirs, the service to be in accordance with the method of serving nonresident defendants in civil suits in the district courts of said state."

The method of service upon nonresident defendants in civil suits was provided by section 4723, R. S. 1910, which provided that an affidavit should be filed before service can be made. The provisions of this section relating to service are jurisdictional and were not followed in this case. The decrees in question were therefore void as to the intervener. An action to cancel void instruments and void decrees which have been recorded in the chain of title is an equitable proceeding.

This action, in so far as it is sought to cancel and set aside such decrees and to set aside the quitclaim deed made by the plaintiff to the defendant, is equitable in

its nature. The right of the intervener to maintain her action to cancel such instruments and set them aside is based on her proof that she is an heir, that is, that she is the common-law wife of Bunnie Hawkins. The proof of such common-law marriage, although a question of fact, is subordinate to the paramount issue as to whether there had been valid decrees determining the heirs in such estates and as to whether such decrees should be canceled. Proof of the common-law marriage would be futile unless the decrees were canceled.

The gist of the action was to cancel and set aside the decrees. This was an action equitable in its nature and was triable to the court without the aid of a jury, unless for advisory purposes; but the parties waived the jury. This did not change the nature of the action. This court has often announced the rule that the trial court's judgment in jury-waived law case will not be disturbed if reasonably supported by evidence, but that in equitable proceedings the judgment of the trial court will not be disturbed by this court on appeal unless the same is against the clear weight of the evidence.

I conclude from a careful re-examination of the record that the court erred in its former opinion in holding that the judgment of the trial court should be reversed because the same was against the clear weight of evidence. It is my opinion that this is an equitable proceeding and that the judgment of the trial court is not against the clear weight of the evidence. The majority announces the law case rule on the question of evidence, when the equitable rule should be applied.